DON SLOCOMB ET AL. V. CAMERON INDEPENDENT SCHOOL DISTRICT ET AL.

No. 4541.    Decided December 15, 1926.
(288 S. W., 1064).

1.—Independent School District—Pupils From Outside—Transfer of Funds —Charge for Tuition.

In enacting Art. 2760, Rev. Stats. 1911, Sec. 91, it was not intended to require any independent school district to educate a scholastic of another district free of charge any longer than the fund transferred with such pupil would pay his proportionate part of the expense of operating its schools. When such schools must continue their term with money raised by local taxation, the transferred pupil, resident of another district, may be required to pay reasonable additional tuition. (Pp. 296-299).

2.—Statutory Construction—Departmental Usage—Subsequent Legislation.

The long continued practice of the State Department of Education under advice of the Attorney General in permitting independent school districts to charge tuition for pupils from other districts, the failure of the

Legislature to otherwise provide in view of such practice, and the apparent recognition of its justice (Acts of 1923, Ch. 32, Sec. 7) are considered in determining the construction of the statute providing for transfer of pupils from one district to another.   (Pp. 297, 298).

Questions certified from the Court of Civil Appeals for the Third District, in an appeal from Milam County.

The Supreme Court referred the question to the Commission of Appeals, Section B, for its opinion and adopt same as its answer.

*Hart, Patterson & Hart* and *E. A. Camp,* for appellants.

A child who has been duly enrolled in the school district of its domicile in the manner and within the time prescribed by law, and who has been transferred by the County Superintendent from such district to another district in the same county in the manner provided by Art. 2760 of Revised Statutes of 1911, is entitled to attend the public free schools in the district to which it is transferred for the whole of the school term of such district for that scholastic year without the payment of tuition for any part of such scholastic year, and the Legislature has never given school boards nor school districts power or authority to charge tuition for transferred pupils.

The Legislature has provided for the transfer of children from one school district to another and has prescribed the method and fixed the status and rights of such transferred child; the Legislature having done this, local school authorities are without power to prohibit the transfer, and cannot, by local rule or regulation, change the child's status, nor by levying of a tuition or otherwise, impose a burden on such transferred child in addition to that imposed by the Legislature.   As to the construction of school laws and the status of transferred children:   Art. 2760, Rev. Stats. of 1911; In re Peabody's Estate, 154 Cal., 173, 97 Pac., 184; 28 Am. & Eng. Enc. of Law, p. 448; State v. Dorsey, 187 N. W., 879, 108 Neb., 134; Wellston Cond. School Dist. v. Matthews, 230 Pac., 739; Logsdon v. Jones, 143 N. E., 56, 211 Ill., 425; Mt. Hope School District v. Hendrickson, 197 N. W., 47, 197 Iowa, 191; City of Edina v. School Dist. of Edina, 267 S. W., 112; Freel v. School City of Crawfordsville, 41 N. E., 312, 142 Ind., 27; Carey v. Board of Education of Belleville, 214 Pac., 792; State v. Board of Commissioners, 58 Pac., 959, 61 Kan., 90; State v. Board of Commissioners, 28 Kan., 431; People v. Board of Education, 13 Barb., 400; Edwards v. Trustees of School City, 42 N. E., 525, 143 Ind., 84; People v. Chicago & N. W. Ry. Co., 121 N. E., 731, 286 Ill., 384; Cook v. Board of Directors, 107

N. E., 327, 266 Ill., 164; People v. Moore, 88 N. E., 979, 240 Ill. 408; Edmondson v. Board of Education, 69 S. W., 274, 108 Tenn., 557; St. Patrick's Orphan Asylum v. Board of Education, 34 How. Prac., 227; State v. Clymer, 147 S. W., 1119, 164 Mo. App., 671; People v. Bartlett, 136 N. E., 654, 304 Ill., 284; Board of Education of Princeton High School v. Board of Education of Wyanet Community High School, 145 N. E., 169; Norton v. Lakeside School District, 133 S. W., 184, 97 Ark., 71; Special School District v. Eubanks, 177 S. W., 900, 119 Ark., 117; Stephens v. Humphrey, 224 S. W., 442, 145 Ark., 172; Thompson v. Elmo Independent School District, 269 S. W., 868; Dahn v. Independent School District, 187 N. W., 630; Grand Lodge v. Board of Independent School District, 110 S. E., 440.

As to construction of statutes and executive and department rulings: G. H. & S. A. Ry. Co. v. State, 81 Texas, 572, 602; Ramsey v. Tod, 95 Texas, 626, 69 S. W., 133; First Texas State Ins. Co. v. Smalley, 228 S. W., 550; State Text-Book Commission v. Weathers, 213 S. W., 207, 134 Ky., 748; Gilbert v. Greens, 216 S. W., 105, 185 Ky., 817; United States v. Dixon, 15 Pet., 158; Houghton v. Payne, 194 U. S., 88; Merritt v. Cameron, 137 U. S., 542, 11 Sup. Ct., 174; Orchard v. Alexander, 157 U. S., 372, 15 Sup. Ct., 635; United States v. Johnson, 173 U. S., 363, 19 Sup. Ct., 427, 36 Cyc., 1142; Jones, Treasurer, v. Marrs, 263 S. W., 570; Gilmore v. Waples, 108 Texas, 167, 188 S. W., 1037; Aetna Life Ins. Co. v. Otis Elevator Co., 204 S. W., 376; Turner v. Cross, 83 Texas, 218, 18 S. W., 578; Larkin v. Pruett Lumber Co., 209 S. W., 443; Evans v. Terrell, 101 Texas, 167, 105 S. W., 490; Fire Association v. Love, 101 Texas, 376, 108 S. W., 158, 810; Bohannon v. City of Louisville, 235 S. W., 750, 193 Ky., 276.

As to injunctive relief being the proper remedy: Logsdon v. Jones, 143 N. E., 56, 211 Ill., 425; Cross v. Board of Trustees, 89 S. W., 506, 121 Ky., 469; Mizner v. School District, 96 N. W., 128.

In this discussion the point that we are trying to make is that the schools of Texas which are conducted under the general school laws, and which are maintained by the public school funds in the usual manner, are and inherently must be public free schools, open to all school children alike. But appellees contend that when the Legislature provided for a board of trustees, and gave them the right to manage and control the schools in their district, that the right to charge tuition for transferred pupils would follow with this right to manage and control.

Had the Legislature made no provision for transferred pupils,

this argument might appear plausible, but by enactment of Art. 2760, R. S., 1911, the Legislature has dealt with the subject of transferred children and has plainly given the child the right to be transferred, and has made no provision for any additional charge.   So far as Art. 2760 is concerned the children who are transferred assume the same status and have the same rights and privileges as though they had originally been enumerated in the district to which it was transferred.

It enacted Art. 2760 providing for transfers; it then enacted Art. 2902, expressly authorizing the trustees to regulate admissions, etc., of overs and unders from within or without the district.   When it was dealing with children from without the district, when it dealt with transfers, or when it dealt with overs and unders from without the district in Art. 2902, why did it not also authorize the trustees to regulate these transferred children who were within the scholastic age?   Are not these enactments and these omissions most significant?   And do they not clearly show the legislative mind and intent not to authorize, but to prohibit the charge of any amount against any child legally transferred to any public free school of the State?   The foundation of the State's right to have levied and collected taxes for the support and maintenance of the public schools is that they are public agencies of the State and are instruments of general good and welfare of the whole State.   No one has private right or benefit in such funds and the payment of the same does not in any way give a private right to their use or benefit to any individual or group of individuals.

*Kleberg & North* of Corpus Christi, *Elmer L. Lincoln* of Texarkana, *T. S. Johnson* of Austin, *Allen D. Sanford* of Waco, *J. J. Collins* of Dallas, *E. A. Wallace* of Cameron, and *Henderson, Kidd & Henderson* of Cameron, for appellees.

The taxing of one subdivision of a county for the benefit of the entire county, or of other subdivisions thereof, contravenes Sec. 1, of Art. 8, of the Texas Constitution, which provides that "taxation shall be equal and uniform."   Sec. 1, Art. 8, Texas Constitution; Sec. 10, Art. 11, Texas Constitution; Sec. 3, Art. 7, Texas Constitution; Art. 2760, Rev. Civ. Stats., 1911; Arts. 2867-2871, Rev. Civ. Stats., 1911; Mills Co. v. Brown Co., 20 S. W., 81; Board of Education v. Haworth, 113 N. E., 939 (941); High School District of Havelock v. County of Lancaster, 49 L. R. A., 343, 83 Am. St. Rep., 525, 82 N. W., 380; Belle Point v. Pence, 17 S. W., 197; Ferris v. Lanier, 3 L. R. A., 713; 1 Cooley on Taxation (4th Ed.), Secs. 314, 316, 317, 327, and copious notes citing authorities; Ex Parte Marshall, 64 Ala., 266; Bromley v.

Reynolds, 2 Utah, 525; 37 Cyc., 749-750; Prince George Co. v. Laurel, 3 L. R. A., 528; Wasson v. Wayne Co., 17 L. R. A., 795; Jackson Co. v. State, 58 N. E., 1037; Hammett v. Philadelphia, 3 Am. Rep., 615; Chicago, etc. Co. v. State, 108 N. W., 557; State v. Edwards, 32 L. R. A. (N. S.), 1078; Campbell County v. City of Newport, 193 S. W., 1, L. R. A., 1917, 791; Primm v. Bellville, 59 Ill., 142; Hubbard v. Fitzsimmons, 49 N. E., 477; Sleight v. People, 74 Ill., 47; Simon v. Northup, 30 L. R. A., 171.

The Legislature may authorize incorporated cities, with the consent of their inhabitants expressed by ballot, to levy and collect a local tax for school purposes, but it cannot require the levy of such a tax. And when such a tax is so levied and collected, for the Legislature to require the appropriation of the proceeds thereof to the benefit of some other locality, or for any other purpose not contemplated when the issue of levying such tax was submitted to the voters, is indirectly a requirement by the Legislature that such a city levy a tax for such other purpose against the consent of its voting population and contrary to Sec. 10, Art. 11, and Sec. 52, Art. 3 of the Texas Constitution, and a denial of the right of local self-government. Texas Constitution, Sec. 10, Art. 11; Texas Constitution, Sec. 52, Art. 3; Campbell Co. v. City of Newport, 193 S. W., 1; State v. Edwards, 32 L. R. A. (N. S.), 1078, 111 Pac., 734; State v. Haben, 22 Wis., 629.

Within the contemplation of Sec. 10, Art. 11, and Sec. 3, Art. 7, of the Texas Constitution, the proceeds of a school tax levied and collected by an incorporated city constituting a separate and independent school district is for the support and maintenance of a public institution of learning within the city. And the appropriation by the State, without the consent of the city, to the benefit of other districts and localities, of a part of the proceeds of such a tax would be taking property without due process of law and denying the city and its inhabitants the equal protection of the laws, and obnoxious to Sec. 1, Art. 14, of the Amendments to the United States Constitution, which provides, "Nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Sec. 10, Art. 11, Texas Constitution; Sec. 3, Art. 7, Texas Constitution; Sec. 1, Art. 14, Amendments, U. S. Constitution; State v. C. B. & Q. Ry. Co., 93 S. W., 784; Lexington v. McQuillan, 35 Am. Dec., 159.

In construing a statute the courts should give great weight to an interpretation placed thereon and consistently followed for a long period of time by administrative officers in applying and

administering it.   Fielder v. Houston Oil Co., 165 S. W., 48;
State v. Brady, 114 S. W., 895, 118 S. W., 128; City of Fort
Worth v. Davis, 57 Texas, 226.

Though cognizant of the interpretation given said transfer
statute by the State Superintendent, the State Board of Educa-
tion and the Attorney General continuously since its enactment,
the Legislature has never, by amendment, or otherwise, dis-
turbed such interpretation, or expressed its disapproval thereof;
which course on the part of the Legislature is equivalent to an
adoption by it of such interpretation.    Houston, etc. Co. v.
Griggs, 181 S. W., 833; Ex Parte Rodriguez, 39 Texas, 768.

If the transfer statute be taken in context with the related
articles of the code bearing upon public education, and with
Art. 11, Sec. 10, of the State Constitution authorizing the Legis-
lature to confer the right of local self-government in school
matters upon incorporated cities and towns, it will clearly appear
there was no legislative intent to give said statute such scope as
would destroy such local self-government, which result obviously
would follow if the appellants' contention should prevail.   Texas
Constitution, 1876, Sec. 10, Art. 11; 8 Gammel's Laws, p. 533;
Rev. Stats., 1879, Arts. 3762-3781 to 3793; Rev. Stats., 1895,
Arts. 3982-4004-5 and 4022 and 4028-29; Acts of 1905, Chap.
124, p. 263, Secs. 133 to 145, and also Secs. 91 and 128; Rev.
Stats., 1911, Arts. 2760 and 2899; Rev. Stats., 1911, Arts. 2867-
2874; Rev. Stats., 1925, Arts. 2768 et seq.; Shipley v. Floydada
Ind. Sch. Dist., 250 S. W., 159; Fenet v. McCuiston, 105 Texas,
299, 147 S. W., 867.

Sec. 10 of Art. 11 of the State Constitution expressly empow-
ered the Legislature to confer upon incorporated cities and towns
the right of local self-government in matters pertaining to the
public schools thereof, and the Legislature did exercise such
power and give to incorporated cities the right to assume exclu-
sive control of such schools.   To give to the transfer statute the
scope sought by the appellants would derogate the statutes con-
ferring exclusive control of their schools upon incorporated
cities so that the constitutional grant of power would only be
partially effected; hence the statute would be brought into con-
flict with such constitutional provision.   On status of city schools
with relation to State and county officers: Board of Trustees v.
City of Sherman, 91 Texas, 188, 42 S. W., 547; Parks v. West,
102 Texas, 11, 111 S. W., 726; Crabb v. Celeste Ind. Dist., 105
Texas, 194, 146 S. W., 528; Davis v. City of Fort Worth, 57
Texas, 229; State v. Brownson, 94 Texas, 436, 61 S. W., 114.
On status of city schools with relation to municipalities: Rock-

dale v. Cureton, 111 Texas, 136, 229 S. W., 852; Bridges v. Poteet, 248 S. W., 415; Fort Worth v. Zane-Cetti, 278 S. W., 185; Hamilton v. Bowers, 146 S. W., 629.

Mr. Presiding Judge POWELL delivered the opinion of the Commission of Appeals, Section B.

This cause is before the Supreme Court upon the following certificate from the Honorable Court of Civil Appeals of the Third District:

"The above styled and numbered cause is pending in this court on appeal from the District Court of Milam County. The question herein certified is material to a decision of the appeal and grows out of the nature and result of the suit and the facts disclosed by the record before us, which, in so far as deemed material to this certificate, follow:

"Appellants are resident citizens of Milam County, residing without the limits of Cameron Independent School District, but within the limits of other school districts in the county, and are parents of one or more children each, within the statutory scholastic age, regularly enrolled in the school districts of their respective residences.

"Appellees are the Cameron Independent School District, and the members of the board of trustees, and the superintendent of schools of that district. While appellants' petition describes the Cameron Independent School District simply as 'an independent school district having a population in excess of five hundred,' appellees allege and all parties virtually concede that the district 'is incorporated in the manner contemplated in Art. 11, Sec. 10, and Art. 7, Sec. 3, of the State Constitution, and which has assumed control of the public free schools in the city (Cameron) limits as contemplated by said articles,' and have requested certified questions embodying this description of the district.

"Prior to August 1, 1925, the children in question (being forty in all and in ages ranging from 8 to 17 years) were, for the scholastic year 1925-6 by application of their respective parents and order of the county school superintendent, regularly transferred from the respective districts of their residences, in which they had been regularly enrolled, to appellee district.

"On April 1, 1924, the trustees of the latter adopted a regulation requiring all scholastics transferred from other districts (the parents not residing in the Cameron district) to pay tuition at the rate of $36.00 per annum in the high school and $18.00 per annum in grades below high school; such sum being payable in two equal installments, the first at the beginning of the first term and the second at the beginning of the second; and

providing that no such transferred pupil should be permitted to enroll in the Cameron schools without presenting to the superintendent receipt for the tuition. On September 4, 1925, this regulation was amended to the extent of permitting the first installment to be paid at any time during the first term.

"All of the scholastics involved in the suit were enrolled in and had attended the Cameron schools during the first term of the 1925-6 session and had paid no tuition.

"On December 31, 1925, the president of appellee district school board sent to appellant Slocomb the following letter:

" 'Permit me to call your attention to the fact that under the School Board's ruling all tuition for pupils living outside the Cameron District will be due not later than January 21, the beginning of the second term of the school year. It has been the custom of the board to collect tuition in two installments, one at the opening of school in September and the other at the beginning of the second term.

" 'For the accommodation of patrons the ruling was changed this year so as to permit patrons to pay the first installment at any time during the first term, but requiring that all tuition must be paid in full not later than January 21, 1926.

" 'The tuition rates as fixed by the Board are as follows:

" 'For High School students $50.00 per year.

" 'For students in grades below the high school $32.00.

" 'Where students are transferred credit is allowed on these amounts for the transfer money, which for the current year is $14.00 per capita.

" 'Your children have been transferred and the amount of tuition due not later than Jan. 21st, 1926, is as follows:

" 'Don Slocomb.................................................$ 50.00
   Casey     "     .................................................. 32.00
   Guy Slocomb................................................. 32.00

   Total amount due...........................................$114.00
   Credit for transfer money........................... 42.00

   Balance due................................................$ 72.00

" 'Under the Board's ruling pupils cannot be permitted to register for the second term until tuition has been paid in full.

" 'By order of the Board of Trustees of the Cameron City Schools.'

"Similar letters were sent to other appellants.

"On January 21, 1926, appellants brought this suit against appellees in the District Court of Milam County, in which, after

alleging the foregoing facts, and in addition that some of appellants were unable to pay the tuition demanded, they prayed for temporary injunction (1) restraining appellees from (a) demanding, collecting or attempting to collect the tuition in question, and (b) in any manner disbarring appellants' children from attending the Cameron schools, and (2) commanding and requiring appellees to allow appellants' children to continue to attend the Cameron schools during the 1925-6 session, under the same terms and with the same rights and privileges accorded other children attending such schools. They also prayed that this relief, upon final hearing, be made permanent. Appellants' petition was presented to the District Judge on the day of its filing, and the prayer for temporary injunction was on the same day 'overruled and denied'. The appeal, which is from this order, was filed in this court January 22, 1926, and on the same day this court granted to appellants a temporary restraining order and mandatory injunction, preserving the *status quo* pending the appeal. The cause was advanced and submitted in this court on February 3, 1926, at which time appellees filed a motion to certify to the Supreme Court.

"Because of the public importance of the controversy thus raised and the evident necessity of having a judicial determination thereof as soon as practicable, we deem it advisable to certify for your decision the following question:

"As a condition precedent to the right to attend the public schools of a city constituting an independent school district, incorporated in the manner contemplated by Article XI, Section 10, and Article VII, Section 3, of the State Constitution, which city has assumed control of the public free schools within its limits as contemplated by said Articles, to which district scholastics have been regularly transferred under the provisions of R. S. 1911, Art. 2760, has such independent school district authority under the Constitution and laws of this State to charge tuition to such transferred scholastics?"

In answering the question certified, we limit our reply to the specific question propounded. In other words, the Cameron district is willing to accept these transfers provided they pay the tuition charged. Therefore, the concrete question in the case is, as stated in the certificate, whether or not the Cameron Independent School District has authority under the Constitution and laws of the State to charge tuition to such transferred scholastic as a condition precedent to the right to attend the public schools of that city.

The transfer statute referred to in the certificate reads as follows:

"Any child lawfully enrolled in any district, or independent district, may be transferred to the enrollment of any other district, or independent district, in the same county, upon the written application of the parent or guardian or person having the lawful control of such child, filed with the county superintendent; but no child shall be transferred more than once; provided, the party making application for transfer shall state in said application that it is the bona fide intention of applicant to send the child to the school to which transfer is asked. Upon the transfer of any child, its portion of the school funds shall follow and be paid over to the district, or independent district, to which such child is transferred; provided, no transfer shall be made after August first, after the enrollment was made. (Id. Sec. 91.")

It is our view that the Legislature, in enacting this Article, did not intend to require any independent school district in this State to educate a scholastic free of charge any longer than the funds transferred with such scholastic would pay such pupil's proportionate part of the expense of operating the schools of such district. In other words, as long as the State apportionment will operate the schools of an independent district, the transfer pupil, whose State apportionment is also transferred, is not required to pay tuition. But, when the schools of an independent district must continue their term with money raised by local taxes levied upon property within such district, then the transfer pupil, a non-resident of such district, must pay a reasonable tuition.

It has been seen that the Legislature expressly transferred the state apportionment with the pupil. That is one evidence of the fact that the lawmakers intended to do justice in this matter and to limit the rights of the transferred pupil to the money sent along with the pupil. As another evidence sustaining our aforesaid construction of this statute, we refer to the following legislation:

In 1923, the Third Called Session of the Legislature appropriated one and one-half million dollars for each of the fiscal years ending August 31, 1924, and 1925, as an aid to rural schools. Section 7 of that Act, Chapter 32, provides:

"Under the provisions of this Act, no one-teacher school, with an enrollment of more than twenty pupils, shall be eligible to receive aid, if said school offers work above the seventh grade, as outlined by the State course of study; provided, however,

that in addition to the funds allotted to any district for a one-teacher school of not more than seven grades, a grant not to exceed ten dollars per month for each child of scholastic age residing in the district and desiring to attend a public high school in another district may be made on the recommendation of the county superintendent, for a period not to exceed the number of months the public schools are maintained in the district of such child's residence, if the said district does not maintain a public high school open to such pupil; and provided further that no such grant may be made unless satisfactory evidence of the actual enrollment of such child in a high school is furnished by the principal thereof, and then only for the months in which such child is in regular attendance on such high school. Said allowance of $10.00 per capita per month is to be in lieu of a transfer of the State and county per capita apportionment, and if such transfer is made, a credit shall be allowed the district for the same. The funds due to high school pupils, as provided in this section, shall be paid to them by warrants drawn by the trustees of the district, against the funds granted said district for such purpose."

This is unmistakable evidence of the fact that the Legislature knew the high schools to which students were transferred were in the habit of charging tuition. They seemed to know about what the average charge was. The State, desiring to promote the interests of those without such advantages at home, gave them such advantages elsewhere. But, the Legislature paid for it and did not impose upon the district to which such high school pupil was transferred. In other words, the lawmakers did the manly thing. They gave the child the advantages of a high school education, but did not require a local district to educate this outsider without the usual pay.

For years and years the State Department of Education, under the advice of the Attorneys General of this State, have ruled that this tuition may be charged. The construction of the departments of State with reference to the meaning of statutes has some weight with the courts. Had this uniform practice among the independent school districts been contrary to the views of the Legislature, it is reasonable to assume that the transfer statutes would have been quickly amended to meet such contrary views.

Finally, we think it would be unjust to ascribe any other intention to the Legislature. There is no such thing, in one sense, as a *free school*. Their operation is costly and some one must pay. The State should not, in all fairness, ask local dis-

tricts to pay its bills. It should not be held to intend to not only command a local district to educate outsiders, but to do so at the expense of such local district. It is not equitable, under any circumstances, to force another to pay your obligations.

For these several reasons, we think the Legislature intended, in passing the transfer Act aforesaid, to permit the charging of such tuition as Cameron is now assessing.

In view of our construction of this statute, it is not necessary to pass upon other points raised by the Cameron trustees. Any other construction of this statute would raise serious constitutional questions. Since it is not necessary to pass upon such questions here, we pretermit such a decision. Should any such legislation be attempted as is contended for here by appellants, there would then be ample time to determine whether or not it would be constitutional.

For the reasons stated, we recommend that the question certified be answered in the affirmative.

The opinion of the Commission of Appeals answering the certified question is adopted and ordered certified to the Court of Civil Appeals.

*C. M. Cureton,* Chief Justice.