**STATE of Texas et al., Appellants,**

v.

**ARANSAS DOCK AND CHANNEL COMPANY et al., Appellees.**

**No. 14066.**

Court of Civil Appeals of Texas.

San Antonio.

Jan. 30, 1963.

Rehearing Denied March 6, 1963.

———◆———

Will Wilson, Atty. Gen., Ben M. Harrison, Joe A. Osborn, Sam V. Stone, Jr., Asst. Attys. Gen., Austin, for appellants.

Boyle, Wheeler, Gresham & Davis, A. W. Worthy, San Antonio, for appellees.

BARROW, Justice.

This is a trespass to try title suit involving the mineral estate of approximately 1290 acres of submerged land and flats situated in Red Fish Bay, Corpus Christi Bay, and on Harbor Island in Nueces County. The case was tried without a jury and the State is appealing from a judgment which adjudicates fee simple title to both surface and mineral estates in subject tracts in the appellees, Aransas Dock and Channel Company and Aransas Properties, Inc. The State does not question appellees' title to the surface estate.

The five surveys in question were each patented to the Aransas Pass Channel and Dock Company, pursuant to the provisions of Sec. 4 and Sec. 6 of Chapter 45, of the General Laws, Regular Session of the 32d Legislature, Vol. 15 Gammel's Laws, p. 69, which Act is referred to hereinafter as the 1911 Act. It was stipulated that the title of the Aransas Pass Channel and Dock Company passed to the appellees. The State asserts that the 1911 Act did not authorize the sale of the mineral estate. The Aransas Pass Channel and Dock Company and its predecessors in title have held said lands, including the mineral estate, without

question for nearly fifty years. The State asserts that the one-year statute of limitations, Art. 5329, Vernon's Tex.Civ.Stats., is not applicable as the authority of the State to sell the lands is in issue.

Appellees, by cross-action, filed their own trespass to try title action, alleging that the 1911 Act provides for the sale of public lands without any reservation of minerals. Appellees further assert that, if there is any ambiguity, the State officials concerned with the administration of the Act have construed the Act, for over fifty years, as authorizing the sale of the fee title without a mineral reservation. Appellees pleaded the one-year statute of limitations and also that the State by accepting deeds to parts of the lands involved, with a mineral reservation to appellees contained in said deeds, is bound by the recitals therein, where the State accepted the benefits under said deeds.

■ The State had the unquestioned power to sell the fee title of both the surface and mineral estates. City of Galveston v. Menard, 23 Tex. 349. There is no question but that all five patents issued to the Aransas Pass Channel and Dock Company on their face purported to grant a fee to said lands. It is fundamental, however, that the validity of the grant of land by the State is based on the authority of the Land Commissioner to issue the patent. Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S.W.2d 265; State v. Delesdenier, 7 Tex. 76. Therefore, it is necessary to examine the 1911 Act to determine the estate authorized by the Legislature to be conveyed.

■ It is important to review the historical background of said Act as an aid to arrive at the legislative intent. Cousins v. Sovereign Camp, W. O. W., 120 Tex. 107, 35 S.W.2d 696. This Act was a part of the long struggle to procure deep water across the Aransas Pass Bar between St. Joseph Island and Mustang Island, so as to provide an entrance for ocean-going ves-

sels to the docks on Harbor Island and to the Port of Corpus Christi. The 25th Legislature in 1897 passed a related Act and authorized the sale of Harbor Island and the submerged islands between Harbor Island and the main vicinity of the town of Aransas Pass to the Aransas Pass Harbor Company. It is undisputed that at the time the 1911 Act was passed, the Aransas Pass Channel and Dock Company had dredged the channel and had become vested with a statutory easement in a 700-foot strip on each side of the channel under authority of Chapter 23 of the Acts of the 25th Legislature. Vol. 10, Gammel's Laws, p. 1073, now Art. 1479, Vernon's Ann.Civ. St.

■■ From this background it is seen that the primary purposes of the 1911 Act are to encourage the development and use of the harbor and to prevent a monopoly, as would have been possible under the previous Act. It is a settled rule of statutory construction that it is proper to look at all parts of the legislative Act to ascertain its proper construction and meaning, and thereby determine the legislative intent. In applying this rule, the courts will not look to any one phrase, clause or sentence, but to the entire Act. This includes the caption, the body of the Act and the emergency clause. Trawalter v. Schaefer, 142 Tex. 521, 179 S.W.2d 765.

■ In examining the 1911 Act in this light, in our opinion, it provides for the sale, as provided in the patents, of "all the right and title to said land heretofore held and possessed by the said State." There was no reservation of minerals and therefore "all right and title" included all minerals. It is significant that the title and caption of the Act specifically authorize the sale of lands. There is no intimation that any of the sales should be limited to an easement or that different types of purchases would be authorized or required. Sec. 1 and Sec. 2 authorize the "sale of lands" and there is no limitation anywhere in the defined area set forth in Sec. 2, which

would seek to create two classes of estate. The emergency clause set forth in Sec. 14 authorizes the sale without limitation of the lands. Sec. 3 deals with the rights of a railroad company to purchase under this Act, and for the first time reference is made in the Act to a "right of say." Sec. 4 is the section specifically giving channel and dock companies their purchase rights under this Act. We believe that as to Surveys 652, 653 and 654, the Act is clear and unambiguous that fee title passed to grantee without reservation of the minerals.

Surveys 650 and 651 present a more difficult question. It is seen that Sec. 4 authorizes channel and dock companies to make purchases. These two surveys were granted under the authority of permitting channel and dock companies to purchase a right of way adjoining the channel. It is our belief that it is more consistent with the purpose of the Act that this term was merely used as descriptive rather than as limiting the title. We have already observed that there is no mention or even intimation of sale of a right of way or easement in the caption. All land was treated in the same manner in the Act and was sold for the same price. It is also significant that before applying to purchase the lands, the channel and dock company was required to complete the channel. The right of way was not in the channel. We can not see a purpose to conveyance of a right of way in this instance. State suggests that this was to dump mud as the channel was dredged. However, it is seen here that the channel was already completed before the application to purchase was made. In a related Act of the 36th Legislature, Vol. 19, Gammel's Laws of Texas, First Called Session, Ch. 70, p. 182, providing for the sale of lands in and under Matagorda Bay, and for construction of a channel, the Legislature conveyed the fee to the strip of land adjoining the channel. It did expressly reserve the mineral estate.

Furthermore, it is seen that channel and dock companies were given authority under Sec. 4 to sell or lease a part of this property. This authority would be inconsistent with grant of only an easement. Also, since the Aransas Pass Channel and Dock Company owned a statutory easement at the time of the passage of the 1911 Act, it cannot be presumed that the Legislature would provide for the sale of only an easement on the same tracts. There would be no purpose in Aransas Channel and Dock Company to quitclaim its statutory easement to the State and then turn around and purchase only the same right The only restriction or limitation in the Act related to the prevention of a monopoly which admittedly has not occurred. Sec. 4 set forth various purposes for which the land could be used, although it did not seek to restrict its use to them. Davis v. Skipper, 125 Tex. 364, 84 S.W.2d 318.

It is provided in Sec. 4 that any channel and dock company or municipality purchasing lands under this Act shall have the right to erect thereon any docks, wharves, warehouses, elevators, coal chutes, terminal tracks, dry docks, slips or ship yards and all appurtenances thereto, useful or necessary in the development of its property and proper conduct of its business, or in the development of said deep water port. The granting of only an easement would not be consistent with this type of development. City of Galveston v. Menard, supra, was a suit over ownership of flats located between a city street and the main channel. The Supreme Court held that by the strict letter of the legislative grant, Menard's right of property did not extend to the channel. However, the Court, after full discussion of purpose of the grant to develop the port, held that the grant is extended to the channel by resort to the plain intention of the contracting parties.

It is our opinion that in order to give meaning and purpose to the 1911 Act requires a construction that the use of the term "right of way" was merely descriptive and did not reserve the mineral estate as here contended by State. Texas Electric Ry. Co. v. Neale, 151 Tex. 526, 252 S.W.2d 451.

**224**

From 1911, and continuously thereafter for half a century, the construction we give to this statute, is that which the State and all its interested departments have given it. In 1911, the Attorney General rendered an opinion to the Land Commissioner that the patents to these lands should issue. What is now Article 5405, Vernon's Ann.Civ.St., was then the reason that this matter was referred to the Attorney General for an opinion. That statute states that any question of illegality in the claim should be referred to the Attorney General, "whose written decision shall be sufficient authority for him to issue or withhold the patent." This statute read with the 1911 Act was sufficient authority for the Land Commissioner to issue the patent. In his opinion, the Attorney General described the 1911 Act as one to "authorize the sale of portions of Harbor Island." The Railroad Commission issued orders that the improvements required by the Act had been made in good faith, and approved the application to "purchase the land" upon the receipt by the Commissioner of the General Land Office, of a quit-claim by grantee of all other interest in said land.

In 1918, the Attorney General, in response to inquiry by the Land Commissioner, advised that the 1911 Act authorized the "sale of land" to persons other than a railroad company, a channel and dock company and a municipality. In 1938 the Attorney General, in response to an inquiry of the Railroad Commission, construed the 1911 Act as one authorizing the sale of both the mineral and surface estates. This inquiry was occasioned by the application for an oil permit to drill a well on lands purchased under the 1911 Act. The applicant had been sold this land under the authority granted in Sec. 4 of the Act. The Attorney General advised the Railroad Commissioner that the permit should be granted.

In 1939, the Land Commissioner prepared a map which showed that the mineral estate in the surveys involved herein did not belong to the State of Texas. In 1951, the Railroad Commission issued to appellees a permit to drill an oil well on Survey No. 652. From 1953 through 1960, the appellees paid the State Comptroller the gross production tax on the minerals produced by this well. In 1958 the State acquired by deed the surface estate to a part of the lands contained in Survey No. 650 and Survey No. 651. Even in this suit the Attorney General does not assert that only a right of way was granted, in that a claim is asserted for only the mineral estate, and the Attorney General does not except to the trial court's adjudication of the surface estate in these surveys to appellees. It is also seen that in all subsequent Acts by the Legislature of a related nature, the Legislature expressly reserved the mineral estate. Thus we see that the Land Commissioner, the Attorney General, the Railroad Commission, and the State Comptroller, consistently have understood this Act in the way we have construed it.

■ Where an Act of the Legislature is ambiguous, the Courts are inclined to follow the administrative construction of the Act over a long period of time by the officials charged with its administration. Yoakum County v. Slaughter, 109 Tex. 42, 195 S.W. 1129; Mumme v. Marrs, 120 Tex. 383, 40 S.W.2d 31; State v. Houston & T. C. R. Co., 95 Tex. 507, 68 S.W. 777; State v. Houston Oil Co. of Texas, Tex.Civ. App., 194 S.W. 422, writ ref. It is, therefore, seen, that in construing the estate conveyed under this Act, we should look at the construction given the Act by the officials charged by law with its execution, and when we do that we reach the result that the fee simple title, including both surface and mineral, was intended to be conveyed and was conveyed by the patents.

■ There is an additional reason why the judgment should be affirmed. This suit was brought on behalf of the School Land Board and the Permanent School Fund to recover the mineral estate. Inasmuch as appellees' title was not questioned in the fifty-year period since issuance of the

225

patents, we are confronted with the application of the one-year statute of limitation, Art. 5329, Vernon's Tex.Civ.Stats., pleaded by appellees. This statute provides in part as follows: "No sale made without condition of settlement shall be questioned by the State or any person after one year from the date of such sale."

It has been held that this statute has application only where the sale is authorized by law, or made under color of law. Caples v. Cole, 129 Tex. 370, 102 S.W.2d 173, reh. den. 129 Tex. 370, 104 S.W.2d 3, sets forth this construction. That case involved a trespass to try title suit in which it was asserted that the sale to Cole was void, in that Cole stipulated that the land involved was within five miles of a producing oil well, and, in this situation, the Land Commissioner was only authorized by law to lease the land. The Supreme Court noted that the sale was without authority, was made in the absence of a law, was forbidden by the law, and said it was null and void. However, the State had one year in which to do something about its issuance of the patent and did not do it. The Supreme Court held that the one-year statute of limitations prohibited the suit. On rehearing the Supreme Court limited the application of this statute to sales authorized by law or made under color of law, but held that Caples' suit was barred by the statute.

State v. Sneed, Tex.Civ.App., 181 S.W. 2d 983, applies this rule and is very close in point. The case involved the sale of land admittedly within five miles of a producing oil well. The Land Commissioner testified that he applied to the Attorney General for a ruling under Art. 5405, Vernon's Ann.Civ.St., before issuing the patent to Cole (See Caples v. Cole, supra), and the Attorney General advised that Cole had a right to buy said land even though located within five miles of a producing oil well. The Land Commissioner testified that he applied this same decision of the Attorney General to the land patented to Sneed. The Court of Civil Appeals cited with approval the definition that "color of title" means a good faith attempt to comply with the existing law. Under all these facts it was held that the grant was made under color of title and the one-year statute of limitation applied. The Supreme Court, State v. Sneed, 143 Tex. 121, 183 S.W.2d 566, in a memorandum opinion on motion for rehearing on application for writ of error, held that the one-year statute of limitation applied.

It is seen that under Sec. 6 of the 1911 Act the Railroad Commission is vested with the authority to determine eligibility of the purchaser and to decide which land is to be sold in order to prevent a monopoly. Upon these matters being determined satisfactorily, the Land Commissioner is given authority to issue a patent. If the Act provided for two types of grants, this authority would authorize the Land Commissioner to determine what type of grant to issue. Thus we have a situation similar to Caples v. Cole, supra, and State v. Sneed, supra. Before issuing the patents to Surveys Nos. 650 and 651, the Land Commissioner received an opinion from the Attorney General that Aransas Channel and Dock Company was entitled to purchase the land. This would show that the lands were purchased at least under "color of law," and a good faith attempt of the Land Commissioner to comply with the Act. Where the State did not challenge, for approximately half a century, this grant of all its right, title and interest in these lands, the one-year statute of limitation prohibits its questioning same at this time.

The judgment is affirmed.