Robert S. **CALVERT** et al., Petitioners,

v.

Edward G. **KADANE** et al., Respondents.

No. B–497.

Supreme Court of Texas.

May 1, 1968.

Rehearing Denied June 5, 1968.

Crawford C. Martin, Atty. Gen., J. H. Broadhurst, Asst. Atty. Gen., Austin, for petitioners.

Kilgore & Kilgore, Kiel Boone, Dallas, for respondents.

NORVELL, Justice.

Edward G. Kadane and others brought this suit against the Comptroller, the Treasurer and the Attorney General of the State of Texas to recover taxes paid under protest. The plaintiffs recovered judgment in the trial court which was affirmed by the Court of Civil Appeals. 418 S.W.2d ·315.

The plaintiffs used casinghead gas produced from their oil wells as fuel for internal combustion motors which in turn operated jack (mechanical) and hydraulic (Kobe type) pumps to bring the oil in their wells to the surface. Article 3.01, Title 122A, Taxation-General, Vernon's Ann. Tex.Stats., adopted in 1959, levies an occupation tax on the business of producing gas amounting to seven per cent of the market value of such gas as and when produced. In paragraph 2 of Article 3.01, certain exceptions are set forth, viz.:

"(2) In calculating the tax herein levied, there shall be excluded: (a) gas injected into the earth of this State, unless sold for such purpose; (b) gas produced from oil wells with oil and lawfully vented or flared; and (c) gas used for lifting oil, unless sold for such purpose."

The question presented is whether gas consumed as fuel in an internal combustion motor to operate a pump comes within the statutory exception, "gas used for lifting oil." There is no question of "sold gas" in this case.

*Legislative history and administrative practice.*

In 1941, the 47th Legislature enacted House Bill No. 8, an Omnibus Tax Law. Article II thereof provided for an occupation tax upon the business of producing gas in Texas. (Acts, 1941, 47th Leg. ch. 184, p. 269) This Act contained the following exclusions:

"In determining the market value of gas for the purpose of computing the

tax due, there shall be excluded the value of residue gas lawfully *injected into the earth* in the State of Texas for the following purposes: (a) storage thereof; (b) repressuring; (c) *lifting oil*; and also (d) gas lawfully vented or flared in connection with the production of oil; save and except however, if any gas so injected into the earth is sold for such purposes, then the market value of the gas so sold shall not be excluded in computing the tax." (Emphasis added)

The natural gas portion of this tax bill was designated as Article 7047b by the publishers of Vernon's Annotated Texas Statutes.

In 1945, the Legislature amended Article 7047b so that the exclusions read as follows:

"In calculating the tax herein levied, there shall be excluded: (a) gas injected into the earth in this State, unless sold for such purpose; (b) gas produced from oil wells with oil and lawfully vented or flared; and (c) *gas used for lifting oil,* unless sold for such purposes." (Acts 1945, 49th Leg. ch. 269, p. 423, l. c. 424) (Emphasis added.)

The wording of the exclusions in the 1945 enactment is for all practical purposes the same as that of the present statutory provision, Article 3.01 of Title 122A. The difference between the exclusion provision of 1941 and that of 1945 lies in the requirement that the gas must be injected into the earth. The 1941 enactment exempts gas lawfully "injected into the earth" for the purpose of "lifting oil." The 1945 statute simply provides an exemption for "gas used for lifting oil."

In 1941, the Attorney General filed two opinions, each in substance stating that the gas injected into the ground for the purpose of lifting oil to the surface was not taxable under the 1941 statute. In 1947, after the 1945 amendment became effective, the Comptroller of Public Accounts requested an opinion as to whether "gas burned in engines used for lifting oil is exempt from the tax levied under Article 7047b, R.C.S." The Attorney General summarized his holding as follows:

"Exclusion from the gas production tax of gas used for lifting oil as provided in Subsection c of Section 1 of Article 7047b, has reference only to gas injected into the ground for the purpose of pressure in lifting the oil, and not to gas used as fuel in a pumping engine that lifts oil." [1]

Since 1947, the Comptroller has followed the Attorney General's opinion and collected a tax upon gas consumed as fuel in a prime mover [2] or motor which is used to operate an oil lifting pump.

The record indicates that there are at least three methods in which gas is utilized in lifting oil from the well hole, namely, (1) by using the same as fuel for prime movers which operate mechanical or hydraulic pumps which extract the oil from the well hole, (2) by injecting gas into the earth and repressuring the reservoir, and (3) by a process of aerating the column of oil in the tubing and thus causing it to come to the surface. This third operation is made the basis of one of the Attorney General's arguments here and hence should be briefly described. According to an employee of the Railroad Commission, in a typical operation involving an oil well producing some gas, the product as it comes from the well passes through a separator and the oil and water removed therefrom. The gas then passes through a scrubber where more water is removed. It is then compressed by a compressor which is powered by a motor or prime mover. It is then injected into the

---

1. The opinion of the Attorney General, with the exception of the summary above quoted, is set forth in the opinion of the Court of Civil Appeals. 418 S.W. 2d 315, l. c. 317.

2. "Prime mover," according to plaintiffs-repondents, is "a fancy name for a motor."

**608**

casing and at various depths it passes into the tubing through valves. It operates to aerate and lighten the oil so that such oil passes out of the wellhead with the gas. The lifting of the oil is thus accomplished at first hand by the gas itself and not through application of the gas as fuel.

### Opinion

█ In construing civil statutory enactments, we are enjoined to "look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy." Article 10, Vernon's Ann.Tex.Stats. See also, Popham v. Patterson, 121 Tex. 615, 51 S.W.2d 680 (1932). The particular statutory enactment with which we are concerned is an exception or exclusion contained in a statute levying an occupation tax. If the exclusion provision be plain and unambiguous, there is no need to resort to rules of construction, and it would be inappropriate to do so. Fox v. Burgess, 157 Tex. 292, 302 S.W.2d 405 (1957). If, on the other hand, the meaning of the provision be doubtful or ambiguous, the construction placed upon a statutory provision by the agency charged with its administration is entitled to weight. Slocomb v. Cameron Independent School District, 116 Tex. 288, 288 S.W. 1064 (1926); State v. Aransas Dock and Channel Co., 365 S.W.2d 220 (Tex.Civ.App.1963, writ ref'd.).

In our opinion, the wording of the exclusion contained in the 1945 enactment and carried into Article 1.03, Title 122A, is ambiguous. As heretofore stated, the record shows three methods by which gas may be utilized in "lifting" oil to the surface. In two of these methods, repressuring a reservoir or aerating an oil column standing in the tubing, the gas itself is the directly operating lifting force. Of course, in repressuring the reservoir, the gas is "injected into the earth in this State." However, in the aerating method, while the gas in its compressed state actually passes below the surface of the earth, it is confined for the most part by the casing and tubing and

shortly returned to the surface along with the oil which it "lifts" in the process. We are not entirely certain that this aerating process is comprehended by the phrase, "injected into the earth" as that phrase is commonly understood. However, in both of these processes, the gas in addition to acting as a lifting agency in and of itself, is neither consumed nor destroyed and when its use for "lifting" is over, it may be sold and taxed under the statute.

█ When gas is used for fuel in an internal combustion motor which in turn operates a pump, it is not clear that such fuel is within the statutory exception—"gas used for lifting oil." Actually, the gas itself lifts nothing. The process of raising oil to the surface by mechanical or hydraulic pump is generally referred to as "pumping" and the Legislature, had it desired to plainly provide that gas used for fuel in a gas pumping operation should not be taxed, it could have said so in so many words. It could have used the word "pump" and it could have mentioned "fuel." It should also be noticed that under the statutory construction urged by plaintiff-respondent, it could be argued that all gas used as fuel for pumping oil from the ground (except that sold for such purpose) would not be taxed, regardless of the location of the fuel consuming motor. We might inquire if that gas is tax free which is piped ten miles to an electric generating plant and there used to fire a boiler to produce steam to operate a dynamo and thus produce electricity which flows back over transmission lines to the well site and is there used to operate electric pumps to bring oil to the surface. Under an extremely broad construction of the term, "gas used for lifting oil," such a view might be tenable but we doubt that the Legislature so intended. In our opinion, it is not clear that the Legislature by amending the exclusions contained in Article 7047b in 1945 intended to exclude gas consumed as fuel from the operation of the taxing statute. The Attorney General held in 1947 that fuel gas was not excluded by the 1945 amendment and as a result of

that opinion, the Comptroller's department has since that date collected a tax upon gas used for fuel in motors operating mechanical and hydraulic pumps. Because of these circumstances, we are constrained to hold that such fuel gas is not exempt from taxation under the 1945 amendment to Article 7047b or under the exclusions set forth in Article 3.01 of Title 122A.

For the reasons stated, the judgments of the courts below are reversed and judgment here rendered that plaintiffs-respondents take nothing.

## DISSENTING OPINION

GREENHILL, Justice.

Admittedly, the phrase "gas used for lifting oil," if given its literal meaning, embraces a broad category of methods, particularly when not limited by the words, "injected into the earth," which were employed in the 1941 statute. "Lifting oil" includes any method which by the application of some species of force or energy causes oil to rise to the surface of the earth. It thus includes gas injected into the oil producing structure to re-pressure a reservoir; gas used for aerating the oil column in the tubing, and gas used to operate a pump. The circumstance that a term is broad does not necessarily mean that it is uncertain or ambiguous. The designation of a class of animals as cattle is not uncertain because it includes a number of subclassifications, such as bulls, cows, calves, steers, heifers, and yearlings. The term cattle includes them all just as the term "lifting oil" includes various methods of raising oil to the surface.

Departmental or administrative construction of a statute cannot operate to change or modify the plain meaning of a clearly worded statute. To give effect to administrative construction of a statute under such circumstances would be to recognize that a legislative power was vested in the executive branch of government contrary to the provisions of Article II, § 1, of the Texas Constitution. It is only when the statute is ambiguous and capable of being given two or more differing constructions that the court in interpreting the statute may consider a history of administrative construction. The exclusion, "gas used for lifting oil," as used in Article 3.01 of Title 122A, is clear and unambiguous, hence the controlling rule is that stated in Fox v. Burgess, 157 Tex. 292, 302 S.W.2d 405 (1957).

For the reasons stated, the judgments of the courts below should be affirmed.

GRIFFIN, SMITH and WALKER, JJ., join in this dissent.