**Ex parte Lester ROLOFF, Relator.**

**No. B–4462.**

Supreme Court of Texas.

May 29, 1974.

Rehearing Denied July 10, 1974.

Meredith & Donnell, M. W. Meredith, Jr., Corpus Christi, Charles G. Lowry, Houston, for relator.

John L. Hill, Atty. Gen., John Odam and Lynn Taylor, Asst. Attys. Gen., Austin, for respondent.

DENTON, Justice.

Relator, Lester Roloff, brought this original habeas corpus proceeding after the district judge held him in contempt of court for operating an unlicensed child-care facility after having been permanently enjoined from operating any child-care facility unless properly licensed.

This litigation began when the State of Texas filed suit against Roloff Evangelistic Enterprises, a Texas non-profit religious and charitable corporation operating three separate institutions in Texas for the care of young persons. The State sought an injunction prohibiting Roloff Enterprises from continuing to operate and manage its homes without a license from the Texas Department of Public Welfare

in violation of Article 695c, Section 8(a), subd. 2(a), V.A.C.S.[1] which provides as follows:

"Child-Caring Facility. Every person, association, institution, or corporation, whether operating for profit or without profit, who shall conduct or manage a child-caring institution, agency, or facility coming within the purview of this Act shall obtain a license to operate from the State Department of Public Welfare, which license shall be in full force and effect until suspended or rescinded by the Department of Public Welfare as hereinafter provided."

On August 3, 1973, a judgment was entered by the judge of the 28th District upon the expressed recommendation of the parties and approval by the attorneys representing both the State and Roloff Enterprises. The judgment permanently enjoined Roloff Enterprises "from operating in the State any child-caring institution, agency, or facility as defined in Article 695c, Section 8(a), subd. 1(a), on and from October 1, 1973, unless properly licensed to operate such child-caring institution, agency, or facility by the State Department of Public Welfare." Section 8(a), subd. 1(a), defines a child-care institution as follows:

"Child-Caring Institution. A child-caring institution is defined as any children's home, orphanage, institution or other place maintained or conducted, without profit, by any person, public or private association, or corporation, engaged in receiving and caring for dependent, neglected, handicapped, or delinquent children, or children in danger of becoming delinquent, or other children in need of group care, and which gives twenty-four (24) hours a day care to more than six (6) children."

Prior to the institution of this suit the office of the Attorney General was in the process of responding to questions submitted to it by the Department of Public Welfare. Among the questions submitted was one asking whether licenses were required for institutions that care only for children between the ages of 16 and 18 years of age. In submitting that question the Department of Public Welfare pointed out that Article 695a, Section 9, indicates that no charter shall be issued by the Secretary of State to any organization having to do with the care or custody of children under 16 years of age without an investigation first having been made by the Department of Public Welfare, and further that the definition of a "commercial boarding home" in Article 695c, Section 8(a), subd. 1(e), refers to children under 16 years of age. On the other hand, it was noted that the definitions of child-caring institutions, commercial child-caring institutions, day care centers, commercial day care centers, etc., contained in Article 695c, Section 8(a), refer only to "children" and makes no reference to their age. The Attorney General issued an opinion on September 14, 1973, twelve days after the judgment of August 3, 1973 had become final. The opinion held that the Article required licensing by the Department of Public Welfare for those specific institutions which care for children up to the age of 18. The opinion held "we believe that any child-caring institution, commercial child-caring institution, day care center, commercial day care center, . . . that cares for children under 18 years of age, and is not otherwise exempt, should be licensed by your department, even though it has not previously been licensed due to the departmental construction of the statute." The trial court found that prior to the entry of the August 3, 1973 judgment, it was the policy of the Department of Public Welfare, pursuant to its authority under Article 695c, Section 8(a), not to require a license for child-caring facilities caring for children 16 years and older. The trial court further found that relator was made aware of the department's policy, and understood that a license was not required

for facilities caring for children 16 or over. The court further found that prior to the entry of the agreed judgment of August 3, the court was not made aware by either party of the Department of Public Welfare's policy.

By letter dated October 5, 1973, Roloff Enterprises was advised by the Department of Public Welfare, that in accordance with the Attorney General's opinion, the care for children under the age of 18 years of age was then subject to licensing provisions of Article 695c, Section 8(a), subd. 2(a). Thereafter, the State filed an affidavit of contempt against Roloff Enterprises and its President, Lester Roloff, in which it alleged the Roloff Enterprises had operated a child-care facility as defined by the statute, which had been permanently enjoined from operating any such facility without a license. In a judgment dated February 1, 1974, the District Court of Nueces County found that Roloff Enterprises and Lester Roloff were in contempt of court by reason of their violations of the agreed judgment of August 3, 1973, in that they did operate a child-care facility caring for more than six persons under the age of 18, on the dates set out in the State's affidavit.

 The controlling question presented is the meaning of "children" in Section 8(a), subd. 1(a), which defines child-caring institutions. The agreed judgment of August 3 prohibited Roloff from operating "any child-caring institution" as defined in the statute "unless properly licensed." A child-caring institution is defined as "any children's home . . . engaged in receiving and caring for dependent, neglected, handicapped, or delinquent children, or children in danger of becoming delinquent, or other children in need of group care, and which gives twenty-four (24) hours a day care to more than six (6) children." In construing statutes it is the duty of the court to ascertain the legislative intent. In determining this intent, the court should not look alone to any one phrase, clause or sentence to the act, but to the entire act

itself. Popham v. Patterson, 121 Tex. 615, 51 S.W.2d 680; Calvert v. Kadane, 427 S.W.2d 605 (Tex.1968).

 Article 695c, does not define the word "children." Section 8(a), subd. 1(e), defines a "commercial boarding home"; Section 8(a), subd. 1(f), defines "child-placing agency" Section 8(a), subd. 2(b), provides for licensing of "child-placing facility"; Section 8(a), subd. 2(c), provides for licensing of those who place children for adoption. In each of these four subsections of Section 8(a), reference is made to "children under sixteen (16) years of age." Article 695a, Section 9, provides that no charter shall be issued by the Secretary of State to any organization having to do with the care or custody of children "under sixteen (16) years of age without an investigation having been made first by the Board of Control concerning such application." The other subsections of Section 8(a), defining seven other types of child-care institutions, make reference only to "children" without regard to the age requirement. If the statute being construed is plain and unambiguous, there is no need to resort to rules of construction, and it would be inappropriate to do so. Fox v. Burgess, 157 Tex. 292, 302 S.W.2d 405 (1957). If, on the other hand, the meaning of the provision be doubtful or ambiguous, the construction placed upon a statutory provision by the agency charged with its administration is entitled to weight. State v. Aransas Dock & Channel Company, 365 S.W.2d 220 (Tex.Civ.App.—1963, writ ref.); Slocomb v. Cameron Independent School Dist., 116 Tex. 288, 288 S.W. 1064 (1926); Calvert v. Kadane (supra); Railroad Commission v. United States, Tex.Civ.App., 290 S.W.2d 699, affirmed, 159 Tex. 197, 317 S.W.2d 927 (1958).

 In our opinion, the meaning of Article 695c, Section 8(a), is ambiguous in that subsections 1(a), 1(b), 1(c), 1(d), 1(g), 1(h) and 1(i), which define the various types of institutions which deal with "children" have no specific age require-

ment. On the other hand subsections 1(d), 1(e), 2(b) and 2(c), of the same section refers to "children under sixteen (16) years of age." All of these subsections are concerned with minors whose actual physical custody and control is exercised by institutions other than parents or other authorized individuals. It is undisputed that the Department of Public Welfare had a long standing departmental interpretation that Articles 695c, Section 8(a), does not require licenses for child-caring facilities caring for children 16 and older. We therefore are constrained to hold that "children" as used in Article 695c, Section 8(a), refers to children under sixteen (16) years of age.

The evidence is undisputed that relator did not operate a child-caring institution which had custody and control of more than six children under the age of 16 on all dates material here. That being true, the relator was not required to obtain a license. He therefore was not in violation of the judgment of August 3, 1973.

The relator is discharged from custody.

SAM D. JOHNSON, J., not sitting.