

# The Attorney General of Texas

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1 Texas, Suite 700
Juston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

February 21, 1984

Mr. Jim Boyle
Public Counsel
Office of Public Utility Counsel
8140 Mopac, Westpark III, No. 120
Austin, Texas    78759

Opinion No.   JM-127

Re:   Whether bonding date for Southwestern Bell rate request before Public Utility Commission is governed by amendment effective September 1, 1983 or prior law

Dear Mr. Boyle:

You have requested an opinion regarding a recent change in the Public Utility Regulatory Act [PURA], article 1446c, V.T.C.S., and the effect it may have on Southwestern Bell Telephone Company's [Bell] pending rate hike request before the Public Utility Commission [PUC]. You ask whether section 43(a) of article 1446c equates the requirement of a "statement of intent" with a substantially complete filing and whether the new version of article 43(e) of the PURA applies to the Bell case. We answer both queries in the affirmative.

On June 24, 1983, Southwestern Bell purported to file a "statement of intent" with the PUC pursuant to article 1446c, section 43(a), V.T.C.S., in which it requested increased revenues from Texas rate-payers. A prehearing order for docket number 5220 dated July 12, 1983, states:

> The examiner hereby finds that the rate filing submitted by Southwestern Bell is <u>materially deficient</u> in that it does not contain, by Southwestern Bell's own admission, all of the proposed tariffs and schedules as required by Section 43(a) of the Act, nor all of the testimony and exhibits of all of the company's witnesses such that the company could go forward to hearing and sustain its burden of proof at this time on the information file, as required by P.U.C. PROC. R. 052.01.00.039(a)(2). Pursuant to the provisions of Rule .035(b), Southwestern Bell has ten days to correct the deficiencies. If such deficiencies are not corrected within ten days, the earliest possible effective date of the proposed change

shall be at least 35 days after the filing of substantially complete information. (Emphasis added).

Bell failed to correct the deficiencies within the permitted ten days. On October 20, 1983, the examiner ruled that Bell's filing was substantially complete as of October 19, 1983. Thus, the examiner found that the statement of intent filed June 24, 1983, was insufficient as a matter of law and, for purposes of establishing an effective date, the statement was filed on October 19, 1983, the date of substantial completion.

The Sixty-eighth Texas Legislature amended section 43(e) of the PURA effective September 1, 1983. Under the new version, a utility must wait 150 days beyond the earliest effective date before bonding new rates. Acts 1983, 68th Leg., ch. 274, at 1302. The version of 43(e) in effect prior to September 1, 1983 required only a 90 day waiting period after the effective date. Acts 1975, 64th Leg., ch. 721, at 2344. If the old version of section 43(e) applies to the Bell case, the company may bond higher rates into effect on February 23, 1984. Under the new version, the company may not bond higher rates until April 22, 1984.

Section 43(a) of both versions of the PURA reads in part:

> No utility may make changes in its rates except by filing a statement of intent with the regulatory authority having original jurisdiction at least 35 days prior to the effective date of the proposed change. The statement of intent shall include proposed revisions of tariffs and schedules and a statement specifying in detail each proposed change, the effect the proposed change is expected to have on all the revenues of the company, the classes and numbers of utility customers affected, and such other information as may be required by the regulatory authority's rules and regulations. (Emphasis added).

Unambiguous statutory language is not subject to construction. It must be enforced as written. Ex parte Roloff, 510 S.W.2d 913 (Tex. 1974). The language of this provision clearly mandates that a utility file a statement of intent to raise rates. It specifies what constitutes a statement of intent within the meaning of the statute. A filing which fails to meet the requirements is not valid for purposes of determining the earliest effective date and it is the effective date which triggers the waiting period required by section 43(a). We conclude that section 43(d) of article 1446c equates "statement of intent" with a substantially complete filing.

The statement which Bell filed on June 24, 1983 was ruled "materially deficient" in that it did not contain all the proposed tariffs and schedules as the statute requires. It also failed to include all the testimony and exhibits required by the PUC rules promulgated pursuant to article 6252-13a, V.T.C.S. Thus, the filing did not constitute a valid statement of intent under section 43(a). Furthermore, Bell's failure to provide these documents was not mere oversight on its part such that it was able to correct the deficiencies within ten days: the necessary information was not yet available to the company at that time. See Prehearing Order and Notice of hearing, July 12, 1983, Petition of Southwestern Bell Telephone Company for Authority to Change Rates, Docket No. 5220, p. 2.

Bell met the requirements of section 43(a) on October 19, 1983, well after the new version of section 43(e) went into effect. The PURA was enacted "to protect the public interest inherent in the rates and services of public utilities." V.T.C.S. art. 1446c, §2. To allow the utility to file an invalid statement of intent and preserve rights under the old version of the law would amount to a waiver of the statutory requirement of section 43(a) and of the rights of the consumers of Texas. Bell, by its own admission, instituted this rate hike proceeding well before it was able to supply the mandatory information. It did not file a complete statutory statement of intent until after the new law went into effect. We conclude that the new law governs the bonding date in this case.

### S U M M A R Y

Section 43(a) of the PURA dictates what constitutes a valid statement of intent. Bell's filing of June 24, 1983 was materially deficient and therefore invalid. Bell's filing was not substantially complete until October 19, 1983, and the version of the PURA in effect on that date controls the bonding date.

Very truly yours

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Rick Gilpin
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison
Jim Moellinger
Nancy Sutton