

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

October 3, 1990

Honorable Ralph R. Wallace, III
Chairman
Cultural & Historical Resources
   Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78768-2910

Opinion No.  JM-1228

Re: Authority of an heir-
finder to receive compen-
sation for expenses
(RQ-1997)

Dear Representative Wallace:

You ask whether the Property Code prohibits compensation of reasonable expenses for private investigators who search for, locate, and assist missing owners in recovering unclaimed assets held by the Treasury Department (hereinafter the department).

Title 6 of the Property Code governs unclaimed property in Texas. <u>See generally</u> Property Code chs. 71 (escheat of property), 72 (abandonment of personal property), 73 (inactive accounts held by banking organizations), 74 (report, delivery, and claims process), 75 (Texas minerals). The state treasurer is charged with the administration of this title and may adopt rules necessary for its administration pursuant to section 74.701 of the code.

Your question focuses on the language of section 74.507 of the Property Code, which reads:

> <u>A person</u> who informs a potential claimant that the claimant may be entitled to claim property that is reportable to the State Treasurer under this chapter, that has been reported to the State Treasurer, or that is in the possession of the State Treasurer, or a person who files a claim under this subchapter for such property on behalf of a claimant, <u>may not contract for or receive from the claimant for services an amount that exceeds 10 percent of the value of the property recovered</u>. If the property involved is mineral proceeds, the amount for services may not include a portion of the underlying

> minerals or any production payment, over-
> riding royalty, or similar payment. (Emphasis
> added.)

A brief submitted in connection with this request suggests
that the term "services" does not include "expenses," and
that a private investigator may, therefore, receive reason-
able expenses in addition to ten percent of the value of the
property recovered. We disagree.

Section 74.507 was originally enacted in 1961 as
article 3272a, section 6(b), V.T.C.S., which contained
essentially the same language and provided in part:

> No person holding a power of attorney from
> a claimant . . . shall contract for or
> receive from the claimant for his services an
> amount in excess of ten percent (10%) of the
> value of the property recovered.

Acts 1961, 57th Leg., 1st C.S., ch. 21, § 1, at 49. This
section provided further that when a lawsuit was instituted
on behalf of a claimant, the person holding the power of
attorney could receive up to 25 percent of the value of the
property recovered. Id. Article 3272a was amended in 1965
without affecting the language of section 6(b). See Acts
1965, 59th Leg., ch. 565, § 3, at 1233. With the enactment
of the Property Code in 1983, a nonsubstantive revision of
the Texas statutes relating to real and personal property,
article 3272a, V.T.C.S., was repealed, and the provisions of
section 6(b) were transferred without substantive change to
section 72.506 of the code. See Acts 1983, 68th Leg., ch.
576, § 1, at 3603.

In 1985, section 72.506 was repealed and replaced by
section 74.507, which provided in its entirety:

> A person who informs a potential claim-
> ant that the claimant may be entitled to
> claim property in the possession of the
> State Treasurer or a person who files a
> claim under this subchapter on behalf of a
> claimant may not contract for or receive
> from the claimant for services an amount
> that exceeds 10 percent of the value of
> the property recovered.

Acts 1985, 69th Leg., ch. 230, § 17, at 1138. The language
allowing a person to receive up to 25 percent of the value
of the property for representing a claimant in a lawsuit was

not carried forward. <u>Id.</u> In 1987 further restrictions were placed upon the amount an individual may receive for services when the property involved is mineral proceeds. <u>See</u> Acts 1987, 70th Leg., ch. 426, § 5, at 1985 ("amount for services may not include a portion of the underlying minerals or any production payment, overriding royalty, or similar payment").

The department asserts that the public policy pronounced by the legislature and the "basic underpinning" of the unclaimed property statutes is the complete preservation of the corpus of unclaimed property until it is reunited with the rightful owners. Indeed, the emergency clause to the 1961 act adding article 3272a, V.T.C.S., stated:

> The fact that the present laws <u>providing for the protection of abandoned property, the location of unknown owners and missing heirs and the escheat of money and personal property belonging to the State are inadequate</u>, and that there are large amounts of money and personal property to which the State is entitled, <u>and which property is subject to loss and dissipation</u>, create an emergency.

Acts 1961, 57th Leg., 1st C.S., ch. 21, § 5, at 58 (emphasis added). Besides indicating the legislature's desire to preserve unclaimed property for private owners, the emergency clause also reflects the legislature's intent to protect its interests in such property. In 1961, the state could only take control of abandoned property through judicial proceedings, a rather costly and cumbersome way to accomplish the purposes of the statute. Recognizing that "in many instances the cost of citation by publication, court costs and travel expenses would exceed the value of the property reported as abandoned," the 59th Legislature amended the statute. Acts 1965, 59th Leg., ch. 565, § 8, at 1235. We think the legislature's actions to preserve the corpus of the property were motivated by a desire to protect the interest of both the state and any unknown owners. State v. Liquidating Trustees of Republic Petroleum Co., 510 S.W.2d 311, 313-14 (Tex. 1974) (although article 3272a is commonly referred to as an escheat law, it is custodial in nature, and anyone may file a claim for such property with the state treasurer); Attorney General Opinion MW-186 (1980) ("the state never actually takes title to the property, since the owner may claim the property or its value at any time"); <u>see also</u> Uniform Unclaimed Property Act prefatory note, 8A U.L.A. 216 (1981) ("Not only does the custodial type of statute more adequately preserve the owner's

interests, but, in addition, it makes possible a substantial simplification of procedure").

Since at least one purpose of the unclaimed property laws of Texas includes protection of unknown owners' interests, we must evaluate how that purpose is best accomplished. We have been provided samples of various "heirfinder" contracts that attempt to obtain up to 60 percent of the value of the property received by the claimant.[1] If we were to read the statute as authorizing a private investigator or other person to receive ten percent of the value of the property plus expenses, there is no mechanism in place for determining the reasonableness of expenses. Therefore, we think that a construction of Property Code section 74.507 that would allow a private investigator or "heirfinder" to contract for expenses, potentially in excess of the value of the property, would be contrary to the enunciated public policy and intent of the legislature to preserve the unclaimed property for its owner.

The department, as the state agency charged with the administration of the Texas unclaimed property laws, has interpreted section 74.507 to mean that ten percent of the property value is the total amount an individual may receive for assisting a claimant in recovering assets held by the department. The department argues in its brief on this matter that "services" is a broad and comprehensive term, which encompasses not only one's _personal_ services in completing an objective but also includes activities of others enlisted to accomplish the goal. See, e.g., Van Zandt v. Fort Worth Press, 359 S.W.2d 893, 895-96 (Tex. 1962); Mathews Constr. Co. v. Jasper Housing Constr. Co., 528 S.W.2d 323, 326-27 (Tex. Civ. App. - Beaumont 1975, writ ref'd n.r.e.) (distinction between "services" and "personal services"). It is the department's position that the charge for services, i.e., personal services and incidental expenses, may not exceed ten percent of the value of the property recovered.

It is well established that the construction of a statute by the agency charged with its administration is

---

1. In the past three years, fifty-eight cases involving heirfinders attempting to charge fees far in excess of the statutory ten percent have been referred to the Consumer Protection Division of this office.

entitled to great weight. Ex parte Roloff, 510 S.W.2d 913 (Tex. 1974); Calvert v. Kadane, 427 S.W.2d 605 (Tex. 1968); Stanford v. Butler, 181 S.W.2d 269 (Tex. 1944). It is not required that the agency publish formally adopted rules stating such interpretation; policy documents such as letters to affected persons or internal agency memoranda may also evince an agency's interpretation of a particular matter. Southwest Airlines Co. v. Bullock, 784 S.W.2d 563, 567 (Tex. App. - Austin 1990, no writ). The "Texas Treasury Unclaimed Money Fund Original Owner Claim Form," the form the department provides to individuals who wish to file a claim with the department, states:

> If someone informs or assists you in claiming these funds and asks for payment, STATE LAW LIMITS ANY FEE TO NO MORE THAN 10% OF THE AMOUNT OF THE CLAIM.

The department also provides to interested persons an informational pamphlet entitled "Most Commonly Asked Questions on Heirfinding in Texas," which states on the first page:

> PLEASE NOTE: Expenses incurred as well as the services provided are limited to one fee not to exceed 10 percent of the value of the property recovered.

Another pamphlet distributed by the department, entitled "Money Search: Do You Have Cash in the Texas Treasury Unclaimed Money Fund," states that "State law limits fees charged by these private firms to no more than 10 percent of the claim." We have also been provided with a sample copy of the annual list of names of persons having money in the Unclaimed Money Fund which is published by the Treasury Department for distribution in major Texas newspapers. That published listing also states that a person reclaiming property "may not be charged more than 10 percent of the claim amount by anyone who assists in claiming these funds."

We think that the department's interpretation of the statute in question has been widely published and that the legislature's failure to amend the statute is indicative of its approval of the department's interpretation. Direlco, Inc. v. Bullock, 711 S.W.2d 360, 363 (Tex. App. - Austin 1986, writ ref'd n.r.e.). Although we have found no Texas cases regarding this issue, we note that similar statutes with fee limitations have been upheld in other states. See, e.g., Goodman v. Cory, 191 Cal. Rptr. 272 (App. 1983). We therefore conclude that a private investigator or other person who assists a claimant in recovering assets held by

the department pursuant to Property Code section 74.507 may not contract for or receive from the claimant an amount that exceeds ten percent of the value of the property recovered. The term "services" as used in this section includes expenses. Any other construction of this provision, we think, would be contrary to the legislature's enunciated public policy, the intent of the legislature, and the interpretation of the agency charged with its administration.

## S U M M A R Y

A person who assists a claimant in recovering assets pursuant to section 74.507 of the Property Code may not receive an amount for services (including expenses) that exceeds ten percent of the value of the property recovered.

Very truly yours

**J I M   M A T T O X**
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Karen C. Gladney
Assistant Attorney General