Opinion of August 14, 2007, Withdrawn; Petition for Writ of Mandamus
Granted and Majority and Dissenting Opinions filed February 7, 2008








 

Opinion
of August 14, 2007, Withdrawn; Petition for Writ of Mandamus Granted and Majority and Dissenting Opinions filed February
7, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00653-CV

____________

 

IN RE CALVIN D. WELLS d/b/a WELLS
& SONS ROOFING COMPANY, Relator

 



 

ORIGINAL PROCEEDING

WRIT OF MANDAMUS

 



 

M A J O R I T Y   O P I N I O N

In this original proceeding, relator Calvin D. Wells, d/b/a
Wells & Sons Roofing Company, seeks a writ of mandamus directing the
respondent, R. Jack Cagle, presiding judge of Harris County Civil Court at Law
No. 1, to (1) vacate his orders of July 12, 2007 and July 27, 2007 denying
relator=s motion to
dismiss the underlying lawsuit filed by real party Gary Roberts; (2) enter an
order granting the motion to dismiss; and (3) render a final judgment
dismissing all of real party=s claims against relator.  On August 14,
2007, this court denied relator=s petition because it failed to comply
with the Texas Rules of Appellate Procedure. Relator amended its petition and
we granted relator=s motion for reconsideration.  We now
withdraw our August 14, 2007 opinion and grant relator=s petition for
writ of mandamus.








Underlying Facts and Procedural History

In March of 2005, relator Calvin D. Wells, doing business
as Wells & Sons Roofing Company (AWells Roofing@), replaced the
roof on Gary Roberts=s home in Houston, Texas.  In May of 2005,
Roberts, through his attorney, notified Wells Roofing that the roof had rippled
almost immediately upon installation and that Aother aspects of
your work were improper and insufficient.@  Roberts also
complained specifically that Wells Roofing did not remove the old felt from the
existing roof before the new roof was applied, as Wells Roofing had purportedly
represented it would do.  Contending that Wells Roofing=s actions and
omissions constituted a violation of the Texas Deceptive Trade Practices Act (ADTPA@)[1]
as well as fraud, breach of warranty, and breach of contract, Roberts demanded
reimbursement for the price paid for the roof, the cost of an engineer=s inspection and
report, and his attorney=s fees.

In June of 2005, in Roberts=s presence, Calvin
Wells and a construction consultant inspected the roofing shingles and
installation at Roberts=s home.  Based in part on the consultant=s report, Wells
Roofing made a settlement offer to Roberts in a letter dated June 28, 2005.  In
the letter, Wells Roofing (1) addressed each allegedly deficient condition
covered in the engineer=s report that Roberts had commissioned
after the roof=s installation and (2) offered to pay Roberts a
monetary sum to cover his attorney=s fees and an
itemized list of repairs, modifications and alterations to the roof.  Roberts=s attorney
received Wells Roofing=s settlement offer on June 30, 2005, but Roberts
did not respond to the offer.








In February of 2007, Roberts filed a lawsuit for damages
against Wells Roofing, asserting breach of contract, fraud, and DTPA causes of
action.  In his petition, Roberts alleged that he sent Wells Roofing a timely
notice of his claims as required by the DTPA but that Wells Roofing Ahas not offered to
rectify [its] breaches.@  On the basis that Wells Roofing
knowingly committed allegedly deceptive acts or omissions, and that it
intentionally induced him to rely on false promises, Roberts prayed for actual
and punitive damages plus attorney=s fees.  

Wells Roofing moved to dismiss the lawsuit because Roberts
had failed to comply with certain provisions of the Texas Residential
Construction Liability Act (RCLA).[2] 
After a hearing and briefing from both sides, the trial court denied the motion
to dismiss on July 12, 2007.  Wells Roofing then filed a motion, with briefing,
asking the court to reconsider its ruling.  On July 27, the court issued a
second order denying both the motion to dismiss and the motion for
reconsideration.  This second order was based on the court=s finding that
Wells Roofing is not a Acontractor@ under the RCLA
and, therefore, not subject to its provisions.  

Wells Roofing filed this proceeding seeking relief, by writ
of mandamus, from the trial court=s orders of July
12 and July 27, 2007.

Standard of Review

Mandamus
is an extraordinary remedy that will issue only to correct a clear abuse of
discretion when the abuse cannot be remedied by appeal.  Walker v. Packer,
827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).  On mandamus review
of factual issues, a trial court will be held to have abused its discretion
only if the party requesting mandamus relief establishes that the trial court
could have reached but one decision.  Johnson v. Fourth Court of Appeals,
700 S.W.2d 916, 197 (Tex. 1985) (orig. proceeding); Walker, 827 S.W.2d
at 839B40.  Mandamus review of issues of law is
less deferential.  A trial court abuses its discretion if it clearly fails to
analyze the law correctly or apply the law to the facts.  In re Cerberus
Capital Mgmt., L.P., 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding).








Even where a trial court is shown clearly to have abused
its discretion, the extraordinary remedy of mandamus will not issue if the
aggrieved party has an adequate remedy by appeal.  An appellate remedy is not
inadequate merely because it may involve delay and/or expense.  Walker,
827 S.W.2d at 842; Iley v. Hughes, 311 S.W.2d 648, 652 (Tex. 1958)
(orig. proceeding).  A[O]nly when parties stand to lose their
substantial rights@ will the appellate remedy prove
inadequate and mandamus review be appropriate.  Walker, 827 S.W.2d at
842.

Analysis

I.        Residential Construction
Liability Act

The RCLA applies to Aany action to
recover damages or other relief arising from a construction defect, except a
claim for personal injury, survival, or wrongful death or for damage to goods.@  Tex. Prop. Code
Ann. '27.002(a)(1)
(Vernon Supp. 2007).  The RCLA contains certain notice and settlement offer
requirements that must precede such actions.  Id. '27.004.  The
substance of these requirements varies depending on whether the particular
residential construction dispute is also subject to the state-sponsored
inspection and dispute resolution process under the Residential Construction
Commission Act (ARCCA@).[3] 


The RCCA=s state-sponsored inspection and dispute
resolution process applies to certain disputes between a builder and a
homeowner.  Id. '426.001.  For purposes of this action, a Abuilder@ is defined under
the RCCA as:

any business entity or individual who ... constructs or supervises or
manages the construction of:

(1) a new home;

(2) a material improvement to a home, other than
an improvement solely to replace or repair a roof of an existing home; or








(3) an improvement to
the interior of an existing home when the cost of the work exceeds $20,000.

 

Texas Residential Construction
Commission Act, 78th Leg., R.S., ch. 458 '1.01, 2003 Tex.
Gen. Laws 1704 (emphasis added) (amended 2007) (current version at Tex. Prop.
Code Ann. '401.003(a) (Vernon Supp. 2007)).[4] 
Because Wells Roofing=s contract with Roberts involved only the
replacement or repair of the roof of Roberts=s existing home,
Wells Roofing does not fall within the definition of Abuilder.@  Thus, the
dispute between Wells Roofing and Roberts is not subject to the state-sponsored
inspection and dispute resolution process of the RCCA.

With respect to a
dispute not subject to the RCCA inspection and dispute resolution process, the
RCLA requires a claimant to give notice to a contractor more than 60 days
before filing suit. Tex. Prop. Code Ann. '27.004(a) (Vernon
Supp. 2007).  Such notice must specify in reasonable detail the construction
defects of which the claimant complains. Id.  Within 45 days of
receiving such notice from a claimant, the contractor may make a settlement
offer, in writing, to the claimant.  Id. '27.004(b).  The
contractor may offer repair of any construction defect in the notice.  Id. 
The offer may provide that the contractor itself or an independent contractor
will make the repair, at the contractor=s expense or at a
reduced rate to the claimant.  Id.  The offer must describe in
reasonable detail the repairs that will be made.  Id.








The repairs shall be made within 45 days from the contractor=s receipt of the
claimant=s written
acceptance of the settlement offer.  Id.  If the claimant believes the
settlement offer is unreasonable, the claimant has 25 days from receipt of the
offer to advise the contractor, in writing and in reasonable detail, why it
considers the offer unreasonable. Id. '27.004(b)(1).
Within 10 days of receipt of such notice from the claimant, the contractor may
make another written settlement offer.  Id. '27.004(b)(2).              

The RCLA calls for mandatory dismissal of an action not
subject to the inspection and dispute resolution process of the RCCA if, after
a hearing, the court finds that the claimant failed to follow the procedures in
Subsection (b).  Act of June 20, 2003, 78th Leg., R.S., ch. 458 '2.04, 2003 Gen.
Laws 1725 (amended 2007) (current version at Tex. Prop. Code Ann. '27.004(d) (Vernon
Supp. 2007)).[5] 
Even without a hearing or order of the court, such an action is automatically
dismissed if (1) the contractor files a verified motion alleging the claimant
failed to follow Subsection (b) and (2) the claimant does not file a
controverting affidavit within 11 days from the contractor=s filing of its
motion to dismiss.  Id.  

The following facts are undisputed in this proceeding:

$                  
More
than 60 days before filing the underlying lawsuit, Roberts gave Wells Roofing
written notice of his dissatisfaction with certain aspects of the roof and
Wells Roofing=s work.

$                  
Not
later than 45 days after Wells Roofing received Roberts=s notice, Wells
Roofing made a written offer of settlement to Roberts.

$                  
Roberts
provided neither written acceptance of Wells Roofing=s offer of
settlement nor written notice why Roberts considered Wells Roofing=s offer of
settlement unreasonable.








$                  
On
June 12, 2007, Wells Roofing filed a verified motion to dismiss Roberts=s action.  In its
motion to dismiss, Wells Roofing alleged that A[Roberts] failed
to provide ... [Wells Roofing] with any notice advising [Wells Roofing] as to
why [Roberts] rejected the Settlement Offer or otherwise considered the
Settlement Offer unreasonable.@

$                  
Roberts
did not file an affidavit controverting Wells Roofing=s verified motion
to dismiss.

Wells Roofing contends the underlying action (1) was
automatically dismissed on June 25, 2007, 11 days after Wells Roofing filed its
verified motion to dismiss; or, alternatively (2) should have been dismissed
because Roberts failed to comply with the procedures specified in RCLA '27.004(b). Roberts
disputes that the RCLA applies to his underlying action.  Specifically, he
contends his action against Wells Roofing does not concern Aconstruction
defects@ and,
alternatively, that Wells Roofing is not a Acontractor@ as that term is
defined by the RCLA.  Because the RCLA does not apply, Roberts concludes, the
trial court did not abuse its discretion by denying Wells Roofing=s motion to
dismiss.  Roberts further argues that Wells Roofing has failed to show that its
remedy by appeal is inadequate and is thus not entitled to mandamus relief even
if the court did abuse its discretion. 

II.       Did the Trial Court Abuse
its Discretion by Denying Wells Roofing=s Motion to Dismiss the Underlying
Lawsuit?

A.      Is
Wells Roofing a Acontractor@ for purposes of
the RCLA?

The RCLA defines a Acontractor@ as follows:

AContractor@ means a builder, as defined
by Section 401.003, and any person contracting with an owner for the
construction or sale of a new residence constructed by that person or of an
alteration of or addition to an existing residence, repair of a new or existing
residence, or construction, sale, alteration, addition, or repair of an
appurtenance to a new or existing residence.

 








Act of
June 20, 2003, 78th Leg., R.S., ch. 458 '2.01, 2003 Tex.
Gen. Laws 1723 (emphasis added) (amended 2007) (current version at Tex. Prop.
Code Ann. '27.001(5) (Vernon Supp. 2007).[6]


Because the applicable definition of Acontractor@ in RCLA Section
27.001 incorporates the definition of Abuilder@ in Section
401.003, which excludes an entity that replaces or repairs the roof of an
existing home, Roberts concludes Wells Roofing is not a Acontractor@ under the RCLA. 
Wells Roofing thus is not entitled, according to Roberts,  to the benefits and
protections of the RCLA notice and dismissal provisions contained in Section
27.004.  We disagree.

Resolution of a statutory construction issue must begin
with an analysis of the statute itself.  Fitzgerald v. Advanced Spine
Fixation Systems, Inc., 996 S.W.2d 864, 865B66 (Tex. 1999) (Ait is a fair
assumption that the Legislature tries to say what it means, and therefore the
words it chooses should be the surest guide to legislative intent@); Cail v.
Service Motors, Inc., 660 S.W.2d 814, 815 (Tex. 1983).  Where the language
of the statute is clear and unambiguous, it should be given its common everyday
meaning, without resort to rules of statutory construction or extrinsic aids.  Cail,
660 S.W.2d at 815 (citing Banks v. Chicago Grain Trimmers Assoc., 390
U.S. 459, 465 (1968) and Ex parte Roloff, 510 S.W.2d 913 (Tex. 1974)). 
Rules of construction and other extrinsic aids may not be used to create an
ambiguity in a statute.  Fitzgerald, 996 S.W.2d at 866.








The definition of Acontractor@ does indeed
include the definition of Abuilder,@ which excludes a
roofing contractor.  However, the applicable definition of Acontractor@ is not limited to
the definition of Abuilder@; with a
conjunctive Aand,@ it also includes Aa person
contracting with an owner for the construction ... of an alteration of or
addition to an existing residence, [or for] repair of a new or existing
residence.@    There is no exclusion in the latter portion of the
definition of Acontractor@ for an entity
that replaces or repairs the roof of an existing home.[7] 
Wells Roofing is, indisputably, a person contracting with an owner, Roberts,
for the construction of an alteration to an existing residence or for repair of
an existing residence.  So, while Wells Roofing may not be a Abuilder,@ it is, as a
matter of law, a Acontractor.@[8]  We reject
Roberts=s argument that
the notice, offer of settlement, and dismissal portions of the RCLA do not
apply to the action below because Wells Roofing is not a Acontractor.@ 

B.      Does
Roberts=s action against Wells Roofing arise from
a Aconstruction defect@?








This issue was briefed in the trial court but not addressed
in either of the orders denying Wells Roofing=s motions to
dismiss and for reconsideration.  If, however, the record supports a finding
that the RCLA does not apply because Roberts=s action does not
arise from a Aconstruction defect,@ we will not
disturb the orders.  AWe must uphold a correct lower court
judgment on any legal theory before it, even if the court gives an incorrect
reason for its judgment.@  Guaranty County Mutual Ins. Co. v.
Reyna, 709 S.W.2d 647, 648 (Tex. 1986) (per curiam).  See also Luxenberg
v. Marshall, 835 S.W.2d 136, 141B42 (Tex. App.CDallas 1992, orig.
proceeding) (citing Reyna and concluding A[t]his approach is
even more compelling in a mandamus proceeding where the issue is abuse of
discretion@).  Accordingly, we now consider whether Roberts=s action arises
from a Aconstruction
defect.@

AConstruction defect@ is defined in the
RCLA as Aa matter
concerning the design, construction, or repair ... of an alteration of or
repair ... to an existing residence ... on which a person has a complaint
against a contractor.@  Tex. Prop. Code Ann. '27.001(4) (Vernon
Supp. 2007).[9]  
In his original petition, Roberts asserted DTPA, common law fraud, breach of
contract, and breach of warranty causes of action against Wells Roofing.  He
sought to recover, among other damages, A[o]ut-of-pocket
expenses, including but not limited to the cost of re-roofing, inspections, and
other consequential damages.@  The petition did not identify the
factual bases underlying the stated causes of action.  However, in the demand
letter Roberts sent to Wells Roofing in the month after the roofing work was
complete, Roberts made these allegations:

Mr. Roberts specifically stated and ordered that the old felt be
removed before you were to install the new roof.  It was not done, although you
promised him that it would be done.  He relied on that knowing
misrepresentation, suffered damages, and would not have contracted with you had
he been told the truth.  The installed roof rippled promptly and still ripples
to this day, some six weeks after your work was done.  Additionally, other
aspects of your work were improper and insufficient.








In this court, Roberts emphasizes that Wells Roofing
promised, but failed, (1) to remove all old roofing materials before the new
roof was installed and (2) to install a roof carrying a thirty year
manufacturer=s warranty.  Because Wells Roofing failed to comply
with these promises, Roberts maintains, he would have claims for breach of
contract, fraud, and deceptive trade practices even if Wells Roofing had
Aflawlessly
performed the construction aspects of [its] work.@  Therefore, he
concludes, his claims cannot arise from Aconstruction
defects.@ 








However, Roberts asserted in both his trial court and
appellate pleadings that Wells Roofing=s improper
installation of the roof forms at least part of the basis for his complaints.  In the trial court, in his ABrief of Law Respecting Application
of the Texas RCLA,@ Roberts declared that Asome of [my] counts of DTPA
violations do relate to the defective work of [Wells Roofing],@ but argued that Athe main trust [sic] of the case has
nothing to do with construction defects.@  In this court, Roberts argued A[T]his is not a case sounding in
construction defects at all, although those are also present in abundance.@[10]  Roberts=s statements
suggest a belief that the RCLA applies only where defective construction is the
primary basis for the claimant=s lawsuit.  Roberts offers, and we find,
no support for such proposition, and we decline to adopt it.  It is clear from
Roberts=s own pleadings
that his action arises, to some degree, from defective construction, and the
action is thus subject to the RCLA.[11] 
See Kimball Hill Homes, 969 S.W.2d at 526 (confirming, in RCLA context,
that Athe underlying
nature of the claim controls and a plaintiff cannot by artful pleading recast a
claim in order to avoid the adverse effect of a statute@).

Moreover, under the RCLA, an action can arise out of a Aconstruction
defect@ without involving
defective construction or repair work.  Under the express language of the
statute, the complaint against the contractor must merely concern the
design, construction, or repair of a new or existing residence (or of an
alteration or addition thereto).  See Tex. Prop. Code Ann. '27.001(4) (Vernon
Supp. 2007).   Even if we ignore Roberts=s contention that
installation of the roof was defective and consider only his claim that Wells
Roofing induced him to enter the roofing contract by making promises it did not
intend to keep and in fact did not keep, we would nonetheless conclude that
Roberts=s action concerns
the construction of an alteration to, or the repair of, an existing residence. 
Accordingly, Roberts=s action arises from a Aconstruction
defect@ as that term is
defined under the RCLA.  

III.      Does
Wells Roofing Have An Adequate Remedy by Appeal?

The purpose of the RCLA=s notice
requirements Ais to encourage pre-suit negotiations to avoid the
expense of litigation.@  In re Kimball Hill Homes Texas, Inc.,
969 S.W.2d 522, 525 (Tex. App.CHouston [14th Dist.] 1998, orig.
proceeding) (citing Trimble v. Itz, 989 S.W.2d 370, 373B74 (Tex. App.CSan Antonio), writ
denied 906 S.W.2d 481 (Tex. 1995)).  In In re Kimball Hill Homes,
this court held that an appeal was inadequate to remedy a trial court=s failure to
implement the RCLA=s mandatory abatement provision when the
claimants had failed to comply with statutorily prescribed notice prerequisites
to filing suit against the contractor/builder.  969 S.W.2d at 524B25.  If forced to
wait for appeal to present whether Roberts=s failure to
comply with the RCLA=s notice requirements mandates dismissal
of the action, Wells Roofing will endure the very expense of litigation such
notice requirements were meant to avoid.  We conclude that Wells Roofing does
not have an adequate remedy by appeal from the trial court=s refusal to
dismiss Roberts=s action.








Conclusion

As the terms are defined by the RCLA, Wells Roofing is a Acontractor@ and Roberts=s action against
Wells Roofing arises from Aconstruction defects.@ Roberts=s action is thus
subject to the provisions of the RCLA, including the notice provisions of
Section 27.004(b).  Because Roberts failed to comply with those notice
provisions, the trial court abused its discretion by denying Wells Roofing=s motion to
dismiss.[12] 
Further, because Roberts failed to file a controverting affidavit within 11
days of Wells Roofing=s filing of its motion to dismiss, Roberts=s action was
automatically dismissed on June 25, 2007. 

We conditionally grant Wells Roofing=s petition for
writ of mandamus.  We are confident the trial court will (1) vacate its orders
of July 12 and July 27, 2007 denying Wells Roofing=s motion to
dismiss the underlying lawsuit and (2) enter a final judgment in accordance
with the automatic dismissal of the lawsuit, by statute, on June 24, 2007.  If
the trial court does not take such action, the writ of mandamus will issue.

 

 

 

/s/      Leslie B.
Yates

Justice

 

 

Judgment rendered and Opinion filed
February 7, 2008.

Panel
consists of Justices Yates, Seymore, and Guzman. (Seymore, J., files dissent).









[1]  Tex. Bus. & Com. Code Ann. '17.41 et seq. (Vernon 2002 & Supp. 2007).





[2]  Tex. Prop. Code Ann. '27.001 et seq. (Vernon 2000 & Supp. 2007).





[3]  The RCCA constitutes Title 16 of the Texas Property
Code.  Tex. Prop. Code Ann. ''401.001B430.011 (Vernon 2007 & Supp. 2007).  The
state-sponsored inspection and dispute resolution  process constitutes Subtitle
D of the RCCA.  Id. ''426.001B430.011.





[4]  The current definition of Abuilder,@
which does not differ in any pertinent fashion from the quoted definition, does
not apply to Roberts=s action filed on February 2, 2007.  See Act of
June 15, 2007, 80th Leg., R.S., ch. 843 '57,
2007 Tex. Gen. Laws 1768 (AThis Act takes
effect September 1, 2007.@).





[5]  The 2007 amendment changed the statute to provide
for abatement, rather than dismissal, of an action brought by a claimant who
failed to follow the procedures in Section 27.004(b).  See Act of June
15, 2007, 80th Leg., R.S., ch 843 '3,
2007 Tex. Gen. Laws 1753 (codified at Tex. Prop. Code Ann. '27.004(d) (Vernon Supp. 2007)). The amendment took
effect on September 1, 2007, after Roberts=s
action was filed.  Id. '57, 2007 Tex.
Gen. Laws 1768.





[6] This definition was amended effective September 1,
2007.  Because Roberts and Wells Roofing entered into the contract for
replacement of Roberts=s roof  in 2005, the pre-amendment definition applies
to this action.  See Act of June 15, 2007, 80th Leg., R.S., ch 750 '3, 2007 Tex. Gen. Laws 1554 (A[a] contract that was entered into before the
effective date of this Act is governed by the law in effect when the contract
was entered into@). 





[7]  If the legislature meant for the roofing exclusion
to apply to the entire definition of Acontractor,@ it would specifically have so provided.





[8]  The roofing contractors= exclusion is not rendered Ameaningless@ by
this conclusion.  For purposes of the RCLA, whether a construction entity falls
within the Abuilder@
portion of the Acontractor@
definition or within the separate and independent portion of the Acontractor@
definition determines not whether the RCLA applies in the first instance
but rather which particular provisions of the RCLA apply.  See
Tex. Prop. Code Ann. '27.004 (providing two sets of details and timing for
notice, opportunity for inspection, settlement offer, and execution of repairs,
with the applicable set depending whether a particular action is subject to
Subtitle D, Title 16).  It is the fact that roofers are excluded from Abuilders@
that makes Roberts=s action subject to those notice and cure provisions
specifically applicable to actions not covered by Subtitle D, Title 16
of the RCCA (as opposed to those provisions applicable to actions that are
covered by Subtitle D, Title 16).  There is no indication that the legislature
intended to exclude roofers from the entirety of the residential construction
liability scheme; there is indication only that the legislature intended to
exclude roofers from the Subtitle D, Title 16, portion of the residential
construction liability scheme.  See generally Corey F. Wehmeyer, When
Good Homes Go Bad: A Critical Analysis of Texas Homeowner Remedies and the
TRCCA, 38 Tex. Tech L. Rev. 185, 190 (2005) (analyzing Athe procedural web of the RCLA and []RCCA@ and declaring RCLA=s
scope is more expansive than that of RCCA) (citing Cheryl Turner, The
Residential Construction Liability Act and the New Residential Construction
Commission, 7 J. Tex. Consumer L. 13, 14 2003)).  





[9]  Notably, for actions subject to Subtitle D, Title
16, the RCLA adopts the RCCA definition of Aconstruction
defect.@  Tex. Prop.
Code Ann. '27.001(4) (Vernon Supp. 2007) (A>Construction defect=
has the meaning assigned by Section 401.004 for an action to which Subtitle D,
Title 16, applies@).  The RCCA definition of Aconstruction defect@ is
appreciably different from the RCLA definition.  Compare id. '401.004 (Vernon 2007) with id. '27.001(4) (Vernon Supp. 2007).  As explained above,
however, Subtitle D, Title 16, which applies to certain disputes involving
builders, does not apply to this action because, as a roofer, Wells Roofing is
excluded from the definition of Abuilder.@  Therefore, for purposes of this action, the non-RCCA
definition of Aconstruction defect@ is
applicable.





[10]  Emphasis added.  Also in this court, Roberts
summarizes his case as
being Aabout a fundamental breach of
contract ..., [Wells Roofing]=s fraudulent inducement of [Roberts] into that contract, [Wells
Roofing]=s fraud in failing to disclose
information he had a duty to disclose, portraying he had completed the job
according to contract, and manifold violations of the DTPA by [Wells Roofing]
which have nothing to do with construction defects (while others do).@  





[11]  After the trial court denied Wells Roofing=s motion to dismiss but before it
denied the motion for reconsideration and entered the order finding that Wells
Roofing is not a Acontractor@ under the RCLA, Roberts filed an
amended petition.  In the amended petition, Roberts added a statutory fraud
cause of action and deleted his statement specifically seeking to recover the
cost of re-roofing his home.  This amendment does not alter our analysis or affect
our conclusion that Roberts=s action arises from a Aconstruction defect@ for purposes of the RCLA.





[12]  At the time the trial judge considered the parties= arguments and made his ruling, no appellate court had
interpreted the RCLA=s definition of Acontractor,@ which incorporates a separate definition of Abuilder,@
which itself excludes roofing contractors.  However, even in an unsettled area
of law, a trial court=s erroneous legal conclusion constitutes an abuse of
discretion.  Huie v. DeShazo, 922 S.W.2d 920, 927B28 (Tex. 1996).