Opinion issued August 12, 2014



In The

# Court of Appeals

For The

# First District of Texas

——————————————

## NO. 01-13-00264-CV

——————————————

**J. G. WENTWORTH ORIGINATIONS, LLC, Appellant**

**V.**

**ONEXDA A. PEREZ, RSL FUNDING LLC, EXTENDED HOLDINGS LTD, WESTERN NATIONAL LIFE INSURANCE COMPANY, AND AMERICAN GENERAL ASSIGNMENT CORPORATION Appellees**

---

**On Appeal from the County Court at Law No. 2**
**Fort Bend County, Texas**
**Trial Court Case No. 12-CCV-48170**

---

## MEMORANDUM OPINION

Appellant, JG Wentworth Originations, LLC ("JGW"), challenges the county court at law's order approving the application of appellee, RSL Funding, LLP ("RSL"), for the transfer of certain payments to RSL from a structured

settlement owned by Onexda Perez.[1]  In two issues, JGW contends that the county court at law erred in granting RSL's application in contravention of two prior court orders and the Structured Settlement Protection Act ("SSPA").[2]

We affirm.

## Background

As part of a 1999 settlement agreement in a lawsuit brought by her mother alleging the wrongful death of Perez's father, Perez is entitled to receive $1,853.00 per month, beginning on November 26, 2006, and continuing for thirty years through October 2036, and thereafter for the duration of her life.  The defendants who settled the lawsuit assigned to American General Assignment Corporation ("AmGen") the obligation to make the payments to Perez, and AmGen purchased an annuity from its affiliate, American General Annuity Insurance Company, now known as Western National Life Insurance Company ("Western Life"), to fund Perez's monthly payment.

In 2008, Perez entered into a transfer agreement with 321 Henderson Receivables Originations, LLC, now known as JGW.  Perez agreed to convey from her structured-settlement payments, monthly payments in the amount of $653 from March 26, 2009 through and including February 26, 2019 (the "2009 JGW–Perez Transaction").  Fort Bend County Court at Law No. 4 approved the transfer and

---

[1]    Perez has not filed a brief or otherwise participated in this appeal.

[2]    *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 141.001-.007 (Vernon 2011).

signed a final order[3] (the "2009 JGW–Perez Order"). The 2009 JGW–Perez Order assigned the pertinent payments to JGW and directed Western Life to make the assigned settlement payments to JGW. The 2009 JGW–Perez Order constituted a final judgment and was not appealed.

Because Perez sold only a portion of her structured-settlement payments, the 2009 JGW–Perez Order approved a payment "Servicing Agreement," which required that 100 percent of the monthly structured-settlement payments be remitted by Western Life to JGW each month (the "2009 JGW–Perez Servicing Agreement"). Pursuant to the 2009 Servicing Agreement, JGW was to retain the portion of each monthly payment that it received from Western Life, which constituted its assigned payment, and then remit the remaining portion due to Perez. The 2009 JGW–Perez Order confirmed that "[Perez] and [JGW] have agreed to, and the Court hereby approves, a payment servicing arrangement . . . ."

In 2011, Perez completed a second transaction with JGW to sell it additional portions of her monthly structured-settlement payments. Perez agreed to convey from her structured settlement to JGW (1) monthly payments in the amount of $200, beginning May 26, 2011 and continuing through and including February 26, 2019, and (2) monthly payments of $853, beginning March 26, 2019 and continuing through and including February 26, 2023 (the "2011 JGW–Perez

---

[3]    Cause number 08-CV-038009; *In re Onexda Johana Alvarado, Annuitant.*

3

Transaction"). Fort Bend County Court at Law No. 2 approved the transfer and signed a final order[4] (the "2011 JGW–Perez Order"). The 2011 JGW–Perez Order also provided for a Servicing Agreement (the "2011 JGW–Perez Servicing Agreement"). The 2011 JGW–Perez Servicing Agreement provides that Western Life is to remit 100 percent of Perez's monthly structure-settlement payments to JGW. JGW is to retain its portion of the payments, now $853 monthly, and then remit the newly calculated remaining unassigned portion to Perez. The 2011 JGW–Perez Order constitutes a final judgment and was not appealed.

In 2012, Perez entered into another transaction to sell a portion of her monthly structured-settlement payment to RSL (the "RSL–Perez Transaction"). RSL filed its application in Fort Bend County Court at Law No. 2, seeking approval for the transfer to it of 165 monthly payments of $400 beginning April 26, 2012 and continuing through and including December 26, 2025.

JGW filed a Plea in Intervention and Objection to Transfer as an interested party as defined by the SSPA. In its Plea and Objection, JGW asserted that it had a justiciable interest in the transaction based on its obligations under the Servicing Agreements made pursuant to the 2009 and 2011 JGW–Perez Orders; these orders are final, non-appealable, and could not be modified or changed; and the proposed

---

[4] Cause number CCCV-044393; *In re Onexda Alvarado-Perez, Annuitant.*

transfer could not be approved because it would contravene the 2009 and 2011 JGW–Perez Orders.

After a February 27, 2013 hearing, the county court at law overruled JGW's Objections and signed a final order approving the RSL–Perez Transaction (the "2013 RSL–Perez Order"). The 2013 RSL–Perez Order requires JGW to distribute the payments that it receives from Western Life to RSL's designated assignee, Extended Holdings, Limited, rather than to Perez directly. Extended Holdings is then to retain its portion of the payment and remit the remainder to Perez. In the 2013 RSL–Perez Order, the county court at law concluded that the 2013 RSL–Perez Transaction does not contravene any prior court order or any applicable statute.

## Standard of Review

The county court at law's determination that RSL's transfer application does not contravene any applicable statute or court order is a question of law that we review de novo. *See Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). We review a lower court's interpretation of a statute involving purely legal determinations under a de novo standard of review. *See id*. In construing statutes, we ascertain and give effect to the Texas Legislature's intent as expressed by the language of the statute. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We use definitions prescribed by the legislature and any technical or particular

meaning the words have acquired. TEX. GOV'T CODE ANN. § 311.011(b) (Vernon 2013). Otherwise, we construe the statute's words according to their plain and common meaning, unless a contrary intention is apparent from the context, or such a construction would lead to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008). We presume that the Legislature intended a just and reasonable result by enacting the statute. *See* TEX. GOV'T CODE ANN. § 311.021(3) (Vernon 2013). When a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language. *See St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997); *Ex parte Roloff*, 510 S.W.2d 913, 915 (Tex. 1974).

## Transfer of Structured-Settlement Payments

In its first and second issues, JGW argues that the 2013 RSL–Perez Transaction, as a matter of law, contravenes both the 2009 and 2011 JGW–Perez Orders because it forces it into a "new and different servicing arrangement."

The SSPA requires court approval for all direct or indirect transfers of structured settlement payment rights in Texas and contains the following pertinent definitions:

> "Transfer" means any sale, assignment, pledge, hypothecation, or other alienation or encumbrance of structured settlement payment rights made by a payee for consideration, except that the term does not include the creation or perfection of a security interest in structured settlement payments rights under a blanket security agreement entered into with an insured depository institution, in the

6

absence of any action to redirect the structured settlement payments to the insured depository institution, or its agent or successor in interest, or to enforce the blanket security interest against the structured settlement payment rights.

"Payee" means an individual who is receiving tax-free payments under a structured settlement and proposes to transfer payment rights under the structured settlement.

"Transferee" means a party acquiring or proposing to acquire structured settlement payment rights through a transfer.

"Transfer agreement" means the agreement providing for a transfer of structured settlement payment rights.

"Interested party" means, with respect to any structured settlement:

(A)   the payee;

(B)   any beneficiary irrevocably designated under the annuity contract to receive payments following the payee's death;

(C)   the annuity issuer;

(D)   the structured settlement obligor; and

(E)   any other party that has continuing rights or obligations under the structured settlement.

TEX. CIV. PRAC. & REM. CODE ANN. §§ 141.002(7), (9), (18), (19), (21), 141.004

(Vernon 2011).

The SSPA requires that the transferee provide to the payee a disclosure statement setting forth the primary financial terms of the completed transaction at least three days before the payee may sign a transfer agreement contract. *See id.* § 141.003. After the disclosure statement is delivered and the payee and transferee sign a transfer agreement, the transferee is responsible for filing an application for court approval of the proposed transfer. *See id.* § 141.006(a). The application

7

must be filed at least twenty days before a hearing for approval of a transfer, and the transferee shall file and serve on all parties copies of the application, transfer agreement, disclosure statement, listing of the payee's dependents and their ages, notices to any interested party, and notices of the hearing and the manner and time by which written responses must be filed with the trial court. *See id*. § 141.006 (b)(1)–(6).

If the trial court decides to approve the transfer, it must make the following express findings:

(1) the transfer is in the best interest of the payee, taking into account the welfare and support of the payee's dependents;

(2) the payee has been advised in writing by the transferee to seek independent professional advice regarding the transfer and has either received the advice or knowingly waived the advice in writing; and

(3) the transfer does not contravene any applicable statute or an order of any court or other governmental authority.

*Id.* § 141.004 (1)–(3).

JGW asserts that the county court at law could not properly make the express finding required by section 141.004(3) and the express finding in the 2013 RSL–Perez Order that it did not contravene any other court order.[5] In response, RSL asserts that JGW is "offensively using the servicing arrangement and Section 141.004(3) to encumber the unassigned portion of Perez's income stream" without

---

[5] We note that JGW does not assert that there is insufficient evidence to support the county court at law's finding that the 2013 RSL–Perez Transaction did not contravene any court orders or statute.

8

ever "[disclosing] that encumbrance on a disclosure statement" and that such an encumbrance violates public policy.

Specifically, JGW asserts that the following language in the 2013 RSL–Perez Order conflicts with and contravenes the 2009 and 2011 JGW–Perez Orders:

> The transfer as set out in the Application and the Disclosure Statement and in the Transfer Agreement (collectively, the "Proposed Transfer"): (i) does not contravene any applicable Federal or State statute or an order of any court or other governmental authority, or responsible administrative authority, pursuant to Section 141.004(3) of the Texas Civil Practice and Remedies Code, (ii) wholly satisfies the requirements of a "qualified order" under Internal Revenue Code Section 5891(b), and (iii) complies with all statutory requirements of the Act;
>
> . . . .
>
> That "with respect to the Court's order that Wentworth shall receive certain monthly structured settlement/annuity payments from [Western Life] from March 2013 through February 2023 (the "Wentworth Term Payments") and retain the portion of said payments which were transferred and assigned to Wentworth in connection with the transactions approved as part of the Prior Wentworth-Perez Orders (the "Wentworth Assigned Payments"), and remit the totality of the remainder of said payments (the "Wentworth-Extended Holdings Serviced Payments") to Assignee (Extended Holdings, Ltd.) from March 2013 through February 2023 (the "Wentworth Servicing Term") . . . .

JGW also complains that the 2013 RSL–Perez Order provided that a "special custodial relationship is being created" with JGW as "servicer and custodian of the Wentworth Serviced Payments" for the benefit of Perez and Extended Holdings, Ltd. And JGW argues that the county court at law improperly ordered it to provide

9

an acknowledgement letter because it had no legal or statutory authority under which it could require such a letter.

The 2013 RSL–Perez Order includes an express finding that it does not contravene any applicable statute or any court order pursuant to section 141.004(3). As noted by RSL, the RSL–Perez Transaction does not contravene the SSPA or the 2009 and 2011 JGW–Perez Orders, and instead "keeps in place the identical arrangement fashioned by the [2009 and 2011 JGW–Perez Orders] and the servicing arrangement."

Because the SSPA does not define the word "contravene," we construe it using its plain and common meaning. "Contravene" is defined as "to violate or infringe, to defy; to come into conflict with; to be contrary to." BLACK'S LAW DICTIONARY 377 (9th ed. 2009). In the 2009 and 2011 JGW–Perez Orders, the county court at law approved JGW's application to transfer portions of Perez's structured-settlement payments from her to JGW. The 2009 and 2011 JGW–Perez Orders provide that Western Life is to make the payments to JGW, with JGW retaining its portion of the payments and remitting the remainder due to Perez. Perez retained ownership of the remaining portions of the structured-settlement payments, even though she agreed in the 2009 and 2011 JGW–Perez Transactions to let the remaining portions of the payments pass through to JGW before reaching her. In the 2012 RSL–Perez Transaction, Perez agreed to sell additional portions

10

of her structured-settlement payments to RSL. Perez essentially asked the county court at law to approve a transfer in which the remainder of her structured-settlement payments from JGW be paid to RSL, rather than directed to her, before RSL passed the final remainder to her. Thus, the 2013 RSL–Perez Order does not "violate" or "conflict" with the 2009 and 2011 JGW–Perez Orders.

While the SSPA provides a specific protection for Western Life and other structured-settlement obligors and annuity issuers from having to divide payments between the payee and any transferee, or between two or more transferees, it does not provide a similar protection for transferees who enter into "servicing arrangements," such as the one JGW entered into with Perez. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 141.005(4) (Vernon 2011). RSL asserts that JGW is trying to "piggyback on [Western Life's] statutory right to refuse to split monthly annuity payments among recipients" and nothing in the SSPA applies to servicing arrangements to protect JGW. However, JGW has not asserted that the SSPA extends a similar protection to it as the first transferee receiving a payee's entire structured-settlement payment.

Moreover, nothing in the SSPA precludes Perez from transferring additional portions of the remaining portions of her structured-settlement payments to RSL. Indeed, the SSPA appears to anticipate that payees may later transfer additional payments. It provides that "[f]ollowing a transfer of structured settlement payment

11

rights under this subchapter . . . *any further transfer* of structured settlement payment rights by the payee may be made only after compliance with all the requirements of this chapter." *Id.* (emphasis added). Nothing in the SSPA provides that a first transferee, like JGW, may not honor subsequent transfers, even if they are to be made to competing factoring company transferees.

We further note that the 2013 RSL–Perez Order, in effect, also "protects" JGW in the sense that it recognizes and reaffirms JGW's right to first receive Perez's structured-settlement payments and retain its portion of the payments from Western Life before remitting the remaining portion of the payments to RSL's assignee, Extended Holdings. In this way, the county court at law validated the 2009 and 2011 JGW–Perez Orders, rather than contravening them.

Pursuant to the 2009 and 2011 JGW–Perez Orders, Western Life remits Perez's structured-settlement payments to JGW. The remainder, after JGW retains its portion of the payments, is to due Perez, who is free to keep or transfer it to another, pursuant to court approval. Accordingly, we hold that the county court at law did not err in concluding, as matter of law, that the 2013 RSL–Perez Order does not contravene the SSPA or the 2009 and 2011 JGW-Perez Orders.

JGW further asserts that RSL's actions "potentially" constitute an improper collateral attack on the 2009 and 2011 JGW–Perez Orders and the county court at law did not have plenary power or jurisdiction to modify or change these prior

12

orders.  JGW argues that because the Fort Bend County Court at Law No. 4 lost jurisdiction and plenary power "long ago" over the 2009 JGW-Perez Order, and the Fort Bend County Court at Law No. 2 has not "magically reacquired" jurisdiction over the 2011 JGW–Perez Order, the county court at law "could not take action to substantively modify, amend, and change the final judgments rendered in those cases, by acting in a separate proceeding filed by a party, RSL, who was not involved in the prior proceedings."

However, nothing in the record indicates that the county court at law took any action to amend, modify, or attempt to alter the 2009 or 2011 JGW–Perez Orders.  And, as noted above, the county court at law's order does not contravene the 2009 and 2011 JGW–Perez Orders, which remain in full effect.  In short, the county court at law did not allow RSL to "collaterally attack" the 2009 and 20011 JGW–Perez Orders.

We overrule JGW's two issues.

### Conclusion

We affirm the order of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

13